DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Brian R. Prunchak, appeals from the judgment of the Wadsworth Municipal Court that denied his motion to suppress. We affirm.
 I. {¶ 2} On the night of February 20, 2004, Mr. Prunchak went to Legends, a corner bar on Buffham Road in Harrisville Township, in Medina County. Mr. Prunchak left Legends a little before midnight and proceeded home. Mr. Prunchak came to the intersection of Buffham Road and Harris Road in Harrisville Township, and made a right-hand turn onto Harris Road. Trooper Harley Steffenbacher from the Ohio State Highway Patrol was driving behind Mr. Prunchak's vehicle at this time, and observed him make a wide right turn into the oncoming lane, "almost dr[iving] completely off the left side of the road."
 {¶ 3} Trooper Steffenbacher turned onto Harris Road and followed the vehicle for a brief while as the vehicle accelerated rapidly. Because Mr. Prunchak "erratically accelerated," Trooper Steffenbacher reasoned that the driver may possibly be trying to increase the distance between himself and the trooper or get away, and therefore activated his overhead lights to signal to the driver of the vehicle to stop. The activation of the lights automatically caused the video camera in Trooper Steffenbacher's cruiser to activate and begin to record the ensuing events. At about the same time, Mr. Prunchak activated his turn signal, and made a quick turn into a driveway on Harris Road. Later during the investigation it was confirmed that Mr. Prunchak had just recently moved to this location; however, at the time Mr. Prunchak's sudden turn made Trooper Steffenbacher suspicious, especially since the trooper had noticed that Mr. Prunchak's vehicle had Cuyahoga County license plates.
 {¶ 4} Mr. Prunchak pulled into a private driveway and stopped his vehicle. Trooper Steffenbacher approached the vehicle to see Mr. Prunchak sitting behind the wheel. He detected the odor of an alcoholic beverage on Mr. Prunchak's person, and observed that Mr. Prunchak's eyes were bloodshot and glassy. He discovered that the address on Mr. Prunchak's driver's license did not match that of the location where he stopped, but instead had a Strongsville, Ohio address. Mr. Prunchak admitted to Trooper Steffenbacher at this time that he had consumed four beers in the hour that he spent at Legends.
 {¶ 5} Per Trooper Steffenbacher's request, Mr. Prunchak exited his vehicle. Mr. Prunchak then consented to a search of his person for weapons, which turned up nothing. Having the reasonable suspicion that he was under the influence of alcohol, Trooper Steffenbacher then asked Mr. Prunchak to sit in the passenger front seat of his patrol car in order to administer the horizontal gaze nystagmus ("HGN") field sobriety test. During the HGN, Mr. Prunchak presented four of the six "clues" associated with alcohol impairment. Trooper Steffenbacher then pulled out of the driveway with Mr. Prunchak still in the passenger seat, in order to administer other tests on smoother, flatter ground. During the walk-andturn test, Mr. Prunchak moved his feet, stopped to steady himself, raised his arms for balance and turned incorrectly; during the one-leg-stand test, he raised his arms for balance and put his foot down twice.
 {¶ 6} Trooper Steffenbacher concluded from these tests that Mr. Prunchak was under the influence of alcohol. He placed Mr. Prunchak under arrest, advised him of his Miranda rights, and transported him to the Medina post of the highway patrol where he tested .083 blood alcohol level on a BAC DataMaster machine. Trooper Steffenbacher explained to Mr. Prunchak that he arrested Mr. Prunchak because of his wide right turn, and because his acceleration suggested he was trying to get away from the trooper.
 {¶ 7} Mr. Prunchak was charged with driving while under the influence of alcohol, in violation of R.C. 4511.19(A)(4), a first degree misdemeanor, and failure to drive on the right half of the roadway, in violation of R.C. 4511.26, a minor misdemeanor. Mr. Prunchak initially pled not guilty to the charges.
 {¶ 8} On April 12, 2004, Mr. Prunchak filed a motion to suppress all evidence obtained from Mr. Prunchak, any statements made by or taken from Mr. Prunchak, and all observations and opinions gained by Trooper Steffenbacher during the February 2004 encounter. Mr. Prunchak asserted in the motion that Trooper Steffenbacher did not have the requisite reasonable suspicion to stop Mr. Prunchak, that his arrest resulted from an unlawful stop and detention, and that the statements Mr. Prunchak made were elicited in violation of his Miranda rights.
 {¶ 9} Pursuant to a hearing, the trial court issued a judgment entry that denied Mr. Prunchak's motion to suppress. The court concluded that Trooper Steffenbacher had a reasonable articulable suspicion to justify the stop of Mr. Prunchak's vehicle, and that based upon the field sobriety tests and Mr. Prunchak's statements to him he had probable cause to arrest Mr. Prunchak for driving under the influence. The court also concluded that any statements elicited from Mr. Prunchak were not obtained in violation of his constitutional rights, because Mr. Prunchak was not under arrest until he was formally placed under arrest, at which point the trooper read Mr. Prunchak his Miranda warnings.
 {¶ 10} Thereafter, Mr. Prunchak withdrew his formerly entered not guilty plea and entered a plea of no contest. The charge of failure to drive on the righthalf of the roadway charge was dismissed, and the court found him guilty of the driving under the influence charge. This appeal followed.
 {¶ 11} Mr. Prunchak timely appealed, asserting three assignments of error for review. As Mr. Prunchak's first and second assignments of error involve similar questions of law and fact, we address them together.
 II. A. First Assignment of Error
"The Trial Court erred in failing to find that the Police Officer did not have any reasonable suspicion or probable cause justifying a stop of Mr. Prunchak and his automobile."
 Second Assignment of Error
"The trial court erred in failing to find that the arrest of Mr. Prunchak was in violation of Mr. Prunchak's constitutional rights."
 {¶ 12} In his first and second assignments of error, Mr. Prunchak contends that the trial court erred in denying his motion to suppress because Trooper Steffenbacher lacked the requisite reasonable suspicion to stop his vehicle, as well as the probable cause to arrest him after the stop. We disagree.
 {¶ 13} A motion to suppress under the Fourth Amendment to the United States Constitution involves a mixed question of law and fact; as such, this Court defers to the trial court's findings of fact but conducts a de novo review of the trial court's application of the appropriate legal standard to those facts. Ornelas v. United States (1996), 517 U.S. 690,696-97, 134 L.Ed.2d 911; State v. Booth, 151 Ohio App.3d 365,2003-Ohio-829, at ¶ 12. Because a trial court is in the best position to resolve questions of fact and evaluate witness credibility, a reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Hopfer (1996),112 Ohio App.3d 521, 548, citing State v. Venham (1994),96 Ohio App.3d 649, 653. We review "findings of historical fact only for clear error and give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." State v. Jones,
9th Dist. No. 20810, 2002-Ohio-1109, at ¶ 9, quoting Ornelas,517 U.S. at 699. After allowing for such reasonable inferences and giving due deference to the trial court's assessment of the facts, we "decide whether, under a standard of objective reasonableness, those facts would give rise to a reasonable suspicion justifying a stop or probable cause to search [or arrest]." State v. Reed (Aug. 21, 1996), 9th Dist. No. 17635.
 {¶ 14} Next, we recognize that not every interaction between an officer and an individual is necessarily a seizure. "A `seizure' occurs only where the officer, through force or show of authority, has restrained the liberty of a person." Reed, supra. The reasonable suspicion necessary to justify an investigatory stop requires that the officers must be able to refer to "specific and articulable facts" warranting a rational belief that criminal behavior is imminent. Terryv. Ohio (1968), 392 U.S. 1, 21, 20 L.Ed.2d 89; State v. Andrews (1991),57 Ohio St.3d 86, 87. Therefore, a reasonable suspicion is determined by an objective standard, particularly, whether "the facts available to the officer at the moment of the seizure * * * `warrant a man of reasonable caution in the belief' that the action taken was appropriate[.]" Statev. Bobo (1988), 37 Ohio St.3d 177, 178-79, quoting Terry,392 U.S. at 21-22. "Inarticulate hunches" are insufficient to warrant an investigatory stop. Terry, 392 U.S. at 22. Any evidence obtained as a result of an improper detention and investigation is inadmissible. Statev. Chuey (Apr. 26, 2000), 9th Dist. No. 2937-M, citing Mapp v. Ohio
(1961), 367 U.S. 643, 655, 6 L.Ed.2d 1081.
 {¶ 15} "Specific and articulable facts" that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. Bobo,37 Ohio St.3d at 178-79; State v. Lively (July 7, 1997), 9th Dist. No. 2632-M; State v. Davison, 9th Dist. No. 21825, 2004-Ohio-3358, at ¶ 6.
 {¶ 16} Mr. Prunchak first argues that a review of the totality of the circumstances leads to the conclusion that Trooper Steffenbacher did not possess the reasonable suspicion required to permit him to initiate a stop of Mr. Prunchak's vehicle. He insists that he had done nothing to give rise to any suspicion on Trooper Steffenbacher's part; he insists that the only reason that Trooper Steffenbacher followed him was because he was in the vicinity of Legend's Grille late at night. Mr. Prunchak suggests that the trooper's reasons for the stop were merely subjective "hunches," or suspicions that were not reasonable. However, Trooper Steffenbacher specifically testified that he stopped Mr. Prunchak because he had made a wide right turn, that it appeared that Mr. Prunchak may have been trying to evade or flee from the trooper, and that it appeared that he may have been drunk and lost, given the circumstances of his license plates and location.
 {¶ 17} The only information that Mr. Prunchak offers to refute this testimony is his own testimony denying that he made a bad turn, and he insists that no evidence exists of the fact that Mr. Prunchak made a bad turn onto Harris Road. Mr. Prunchak appears to take issue with the fact that Trooper Steffenbacher did not activate his overhead lights until after he followed Mr. Prunchak for fourtenths of one mile, suggesting that this fact may bolster his suggestion that a bad turn never occurred. Mr. Prunchak also points to all the things that he alleges he did properly, suggesting that they should relieve him of any criminal liability: (1) he did not violate any traffic laws (2) he did not make a bad turn; (3) he properly stopped at the stop sign at the intersection with Buffham Road; (4) he used his turn signal as he made the right turn from Buffham Road onto Harris Road; (5) there was nothing unusual about the way in which Mr. Prunchak signaled and turned off of Harris Road and into the driveway.
 {¶ 18} Mr. Prunchak was initially charged with driving while under the influence of alcohol, and failure to drive on the right half of the roadway. Apart from all these facts, we find upon our review of the totality of the circumstances, that the trooper nevertheless had sufficient information to form a reasonable articulable suspicion that Mr. Prunchak was engaged in criminal behavior, and namely the items with which he was charged. We must give deference to the court's determination of the witnesses' credibility and consequent inferences and conclusions drawn by the trial court from the factual circumstances as presented by these witnesses. Akron v. Bowen, 9th Dist. No. 21242, 2003-Ohio-830, at ¶ 5. As the trial court's determinations and inferences were made on facts supported by competent, credible evidence in the record, we may not question the court's decision to believe the trooper's assertions over those of Mr. Prunchak, and must defer to the court's findings. SeeHopfer, 112, Ohio App.3d at 548. Considering the totality of the circumstances in this case, we find that it was entirely proper for the trial court to have concluded that the trooper had a reasonable articulable suspicion, and not merely a subjective hunch, to justify the stop of Mr. Prunchak's vehicle.
 {¶ 19} Beyond raising issue with the stop of his vehicle, Mr. Prunchak further argues that the evidence and statements obtained should nevertheless be suppressed because Trooper Steffenbacher had conducted a warrantless search and seizure of his person, and that the State failed to establish that the search fell into one of the well-recognized exceptions to the warrant requirement. The right of police officers to search incident to arrest is a well-established exception to the warrant requirement of the Fourth Amendment to the United States Constitution.State v. Murrell (2002), 94 Ohio St.3d 489, 491, citing Chimel v.California (1969), 395 U.S. 752, 763, 23 L.Ed.2d 685. Generally, an officer may not make a warrantless arrest for a misdemeanor unless the offense was committed in the officer's presence. State v. Henderson
(1990), 51 Ohio St.3d 54, 56. "A warrantless arrest for a misdemeanor is invalid where the arresting officer lacks a reasonable basis for believing, through his own personal observation of the act constituting the offense or the admission of the arrestee, that an offense has been committed." State v. Reymann (1989), 55 Ohio App.3d 222, 222. If an arresting officer has probable cause to believe that a suspect has committed a misdemeanor in his presence in a public place, then no warrant is required. United States v. Watson (1976), 423 U.S. 411, 418,46 L.Ed.2d 598. Probable cause requires that the facts available to the arresting officer at that time "would warrant a man of reasonable caution in the belief that an offense had been committed." Beck v. Ohio (1964),379 U.S. 89, 96, 13 L.Ed.2d 142, citing Carroll v. United States (1925),267 U.S. 132, 162, 69 L.Ed. 543.
 {¶ 20} Having stopped Mr. Prunchak in the driveway after witnessing his "erratic" turn onto Harris Road, Trooper Steffenbacher detected the odor of an alcoholic beverage on Mr. Prunchak's person, and observed that Mr. Prunchak's eyes were bloodshot and glassy. Trooper Steffenbacher then performed three standard field sobriety tests, and the trooper concluded, based on his knowledge and experience in conducting these tests, that Mr. Prunchak had not performed them satisfactorily. Furthermore, Mr. Prunchak admitted to Trooper Steffenbacher that he had consumed four beers earlier that evening. While Mr. Prunchak disagrees with the trooper's factual determination as to these tests, we reiterate that as a reviewing court we must give due deference to the law enforcement's conclusions and the trial court's decision to give greater weight to the testimony of the trooper. See Jones at ¶ 12; Ornelas, 517 U.S. at 699.
 {¶ 21} Based upon these circumstances, all of which occurred in Trooper Steffenbacher's presence, we find that the trial court properly concluded that the trooper had probable cause to arrest Mr. Prunchak for driving under the influence and failure to drive on the right half of the roadway. See Beck, 379 U.S. at 96; Carroll, 267 U.S. at 162. See, e.g.,State v. Homan (2000), 89 Ohio St.3d 421, 427. Therefore, we also conclude that the trooper executed a valid arrest of Mr. Prunchak, and that therefore any incident search would have also been proper. SeeWatson, 423 U.S. at 418; Henderson, 51 Ohio St.3d at 56. See, also,Murrell, 94 Ohio St.3d at 491; Chimel, 395 U.S. at 763.
 {¶ 22} This Court finds that the trial court did not err in denying Mr. Prunchak's motion to suppress on the aforementioned bases. Accordingly, Mr. Prunchak's first and second assignments of error are overruled.
 B. Third Assignment of Error
"The trial court erred by failing to suppress custodial statements obtained by the Police Officer in violation of Mr. Prunchak's constitutional rights."
 {¶ 23} In his third assignment of error, Mr. Prunchak contends that the trial court erred and violated his constitutional rights by admitting statements made by Mr. Prunchak that he asserts he made during custodial interrogation without being informed of the Miranda warnings. We disagree.
 {¶ 24} As stated above in the first assignment of error, on a motion to suppress, we conduct a de novo review of the trial court's application of the law to the facts of the case, Ornelas, 517 U.S. at 696-97, but defer to the trial court's findings of fact if they are supported by competent, credible evidence. Bowen at ¶ 5.
 {¶ 25} The Fifth Amendment to the United States Constitution provides persons with a privilege against self-incrimination, which is applicable against the states through the Due Process Clause of theFourteenth Amendment. Malloy v. Hogan (1964), 378 U.S. 1, 6, 12 L.Ed.2d 653. Pursuant to Miranda v. Arizona (1966), 384 U.S. 436, 471-72, an individual must be advised of certain constitutional rights when law enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his freedom in any significant way. Specifically, once the police begin a "custodial interrogation," they must use procedures to warn the person in custody of his or her rights, i.e., Miranda warnings.
 {¶ 26} The duty to provide Miranda warnings is only invoked when both "custody" and "interrogation" are present. State v. Wiles (1991),59 Ohio St.3d 71, 83. "Custody" for the purposes of entitlement to Miranda warnings exists where there is a "`restraint on freedom of movement' of the degree associated with a formal arrest." California v.Beheler (1983), 463 U.S. 1121, 1125, 77 L.Ed.2d 1275, quoting Oregon v.Mathiason (1977), 429 U.S. 492, 495, 50 L.Ed.2d 714. Whether a suspect is in such custody depends on the facts and circumstances of each case.State v. Warrell (1987), 41 Ohio App.3d 286, 287. The test to be applied is "whether, under the totality of the circumstances, a `reasonable person would have believed that he was not free to leave.'"State v. Gumm (1995), 73 Ohio St.3d 413, 429, quoting United States v.Mendenhall (1980), 446 U.S. 544, 554, 64 L.Ed.2d 497.
 {¶ 27} Mr. Prunchak does not reference any specific statements that he asserts should be suppressed; rather, he simply states that he believes any and all statements elicited from him after his search, confinement in the cruiser, and transport by the trooper to the highway, should be suppressed. Specifically, Mr. Prunchak argues that he was not given his Miranda warnings when he was taken into custody, and asserts that he was first taken into custody either when he was blocked into his driveway and requested to step out of the vehicle, or when the trooper performed a search of his person and ordered him to seat himself in the cruiser. However, an individual detained at a traffic stop is not in "custody" for Miranda purposes until the individual has been formally arrested or subjected to a functional equivalent of a formal arrest. Berkemer v.McCarty (1984), 468 U.S. 420, 440, 82 L.Ed.2d 317; State v. Overholt
(Apr. 12, 2000), 9th Dist. No. 2980-M. Therefore, Mr. Prunchak was not in custody at the time that he stepped out of his car, for the purposes of Miranda warnings.
 {¶ 28} Furthermore, the videotape transcript reveals that Trooper Steffenbacher asked Mr. Prunchak to sit in the front passenger seat of his patrol car so that he could take Mr. Prunchak to the end of the driveway in order to perform field sobriety tests on a flat and smooth surface. We cannot conclude that this action on the trooper's part rises to the level of restraint or confinement that functionally constitutes the type of "restraint on freedom of movement of the degree associated with a formal arrest." (Quotations omitted.) See Beheler, 463 U.S. at 1125;Mathiason, 429 U.S. at 495. Therefore, we find that the competent and credible evidence in the record supports a legal conclusion that Mr. Prunchak was not in custody for purposes of Miranda warnings at these specific times. Furthermore, the videotape of the arrest and Trooper Steffenbacher's testimony at the suppression hearing both corroborate that Mr. Prunchak had been read his Miranda warnings at the time that he was formally arrested.
 {¶ 29} We find that the trial court properly concluded, based on competent, credible evidence, that any statements elicited from Mr. Prunchak were not obtained in violation of his constitutional rights, and therefore, also find that the trial court committed no error in denying the motion to suppress on this basis. Mr. Prunchak's third assignment of error is overruled.
 III. {¶ 30} Mr. Prunchak's first, second, and third assignments of error are overruled. The judgment of the Wadsworth Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Baird, J. Concurs
Carr, P.J. Concurs in Judgment only
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)