[Cite as *State v. Genet-Morlan*, 2019-Ohio-4553.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28964 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DELVIN W. GENET-MORLAN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. CR-2017-04-1503-B |

DECISION AND JOURNAL ENTRY

Dated: November 6, 2019

PER CURIAM.

{¶1}    Appellant, the State of Ohio, appeals an order that suppressed evidence gained as the result of a search.  This Court reverses.

I.

{¶2}    On April 25, 2017, Officer Michael Crawford observed a vehicle stopped at the intersection of Lake Shore Boulevard and Miller Road.  As Officer Crawford's cruiser turned at the intersection, the vehicle also started to pull forward, requiring him to swerve to avoid a collision.  Officer Crawford turned around to follow the vehicle and noted that it made a series of quick turns.  He activated his overhead lights, turned around again, and resumed pursuit of the vehicle.  After he witnessed more rapid turns, Officer Crawford saw the driver park the car at the edge of the roadway and switch positions with the passenger.

{¶3}    Officer Crawford initiated a traffic stop and approached the person in the driver's seat, Mr. Genet-Morlan.  Officer Crawford noted that Mr. Genet-Morlan was hearing impaired,

but that he seemed to understand their conversation. During a subsequent pat-down, Officer Crawford asked Mr. Genet-Morlan if he could remove his wallet from his pocket, and Mr. Genet-Morlan agreed. Officer Crawford later opened the wallet with Mr. Genet-Morlan's permission and found methamphetamine. On May 9, 2017, the Summit County Grand Jury indicted Genet-Morlan on one count of aggravated possession of drugs. Mr. Genet-Morlan moved to suppress the evidence gained as a result of the traffic stop, arguing, among other things, that his consent to the removal of his wallet from his pocket and subsequent search was invalid. The trial court granted the motion to suppress, and the State of Ohio appealed pursuant to R.C. 2945.67(A) and Crim.R. 12(K).

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS EVIDENCE.

{¶4} In its sole assignment of error, the State of Ohio argues that the trial court erred by granting Mr. Genet-Morlan's motion to suppress. Specifically, the State of Ohio maintains that the trial court erred by determining that Mr. Genet-Morlan did not voluntarily consent to the retrieval and search of his wallet. This Court agrees.

{¶5} This Court's review of the trial court's ruling on the motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. *Id*.; *State v. Hopfer*, 112 Ohio App.3d 521, 548 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653 (4th Dist.1994). Consequently, this Court accepts a trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8. Once this Court has determined that the trial

court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo. *See id.* In other words, this Court then accepts the trial court's findings of fact as true and "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). In this case, the State has not challenged the trial court's findings of fact, so our analysis focuses on the legal questions presented.

{¶6} Subject to specific exceptions, which the State has the burden of establishing, warrantless searches are unreasonable per se under the Fourth Amendment. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 98, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455 (1971). "It is * * * well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), citing *Davis v. United States*, 328 U.S. 582, 593-594 (1946) and *Zap v. United States*, 328 U.S. 624, 630 (1946).

{¶7} Consent must be voluntarily given, and it cannot be "the result of duress or coercion, express or implied." *Bustamonte* at 247. This determination is made based on all of the surrounding circumstances. *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, ¶ 38, citing *State v. Childress*, 4 Ohio St.3d 217 (1983), paragraph one of the syllabus. One such consideration, as the trial court noted, is whether the subject of the search was in custody at the time that consent was given. *United State v. Watson*, 423 U.S. 411, 424-425 (1976) ("the fact of custody alone has never been enough in itself to demonstrate a coerced * * * consent to search."). In considering the totality of the circumstances in this case, the trial court determined that Mr. Genet-Morlan was in custody when he consented to the search and gave great weight to

that determination, noting particularly that Officer Crawford expressed that opinion. The question of custody is, therefore, the starting point for this Court's analysis.

{¶8} The detention that is part and parcel of a traffic stop does not, standing alone, place a suspect in custody for Fourth Amendment purposes. *Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, ¶ 11, citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). An individual detained during the course of a traffic stop is only in custody if he is "subjected to 'restraints comparable to those associated with a formal arrest.'" *Oles* at ¶ 13, quoting *Berkemer* at 441; *State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 14, quoting *State v. Prunchak*, 9th Dist. Medina No. 04CA0070-M, 2005-Ohio-869, ¶ 27. Consequently, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer* at 439. *See also Oles* at ¶ 27. An officer may also conduct a pat down during a traffic stop when officers have reasonable concerns for their safety. *State v. Andrews*, 57 Ohio St.3d 86, 89 (1991), citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Such a pat down does not necessarily "convert [a] routine traffic stop into a custodial situation[.]" *State v. Serafin*, 11th Dist. Portage No. 2011-P-0036, 2012-Ohio-1456, ¶ 38. When considering whether the subject of a traffic stop is in custody, "the only relevant inquiry is how a reasonable man in the *suspect's* position would have understood his situation." (Emphasis added.) *Berkemer* at ¶ 442. A police officer's perception of the circumstances is irrelevant. *See id.*

{¶9} In determining the question of custody, courts must consider the totality of the circumstances. *Oles* at ¶ 1. In this case, the evidence demonstrates that a reasonable person in Mr. Genet-Morlan's situation would not have understood himself to be in custody. Officer Crawford testified that after initiating the stop, he left Mr. Genet-Morlan unattended in the

vehicle while he assisted Officer Bowman when the passenger "began to struggle a bit." When he returned, he asked Mr. Genet-Morlan to step from the vehicle and explained why he wanted to conduct a pat down. Officer Crawford explained that during the course of the pat down, he asked permission to remove the wallet from Mr. Genet-Morlan's pocket and then to place it on the roof of the vehicle. Officer Crawford's request for consent to look inside the wallet followed immediately thereafter. There is no indication that the encounter, which occurred during daytime hours in a public place, was prolonged or confrontational. At no time did Officer Crawford communicate to Mr. Genet-Morlan that he was in custody. *Compare Berkemer* at 442. A reasonable suspect in Mr. Genet-Morlan's position would not have perceived that he was subject to restraint in a manner comparable to arrest under these circumstances. *See id.* at 441.

{¶10} The fact that Mr. Genet-Morlan was not in custody is one consideration in determining whether his consent was voluntarily given, and the totality of the circumstances demonstrates that this was the case. Mr. Genet-Morlan was not restrained in any manner, nor was he subject to any display of force on the part of the police officers apart from the brief struggle involving the passenger in the vehicle. Officer Crawford did not make any threats or promises to secure his consent, and Officer Crawford was unequivocal in his testimony that Mr. Genet-Morlan understood the substance of their conversation and responded appropriately.

{¶11} Mr. Genet-Morlan was not in custody when he consented to the search at issue in this case and, as demonstrated by the totality of the circumstances, the consent that he gave was voluntary. The trial court erred by determining otherwise, and the State of Ohio's assignment of error is sustained.

6

III.

{¶12} The State of Ohio's assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed.

Judgment reversed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

CALLAHAN, J.
SCHAFER, J.
CONCUR.

CARR, P.J.
DISSENTING.

{¶13}  The trial court suppressed the evidence of the methamphetamine found in Genet-Morlan's wallet because it found that Genet-Morlan was unlawfully taken into custody during the traffic stop, thereby rendering his consent involuntary. I agree because the State failed to meet its burden at the suppression hearing.

{¶14}  Searches conducted without a warrant are per se unreasonable under the Fourth Amendment, subject only to a few specific exceptions.  *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978).  It is well settled that once the defendant demonstrates that the State conducted a warrantless search, the burden shifts to the State to prove that its actions were constitutionally permissible.  *See Maumee v. Weisner,* 87 Ohio St.3d 295, 297 (1999).

{¶15}  There is no dispute that police searched Genet-Morlan's wallet without a warrant. Thus, the State held the burden to prove that an exception to the warrant requirement applied, namely, in this case, the consent exception.

{¶16}  The State was required to demonstrate by clear and convincing evidence that consent was obtained and, further, that the consent was freely and voluntarily given.  *See Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). The issue of whether an individual lawfully consented to a search is not a question of law, but rather, a question of fact.  *See Ohio v. Robinette*, 519 U.S. 33, 40 (1996).  "Because reviewing courts should defer to the trial court when it acts as a trier of fact, we must give proper deference to the court's finding regarding whether [the defendant] voluntarily consented to a search."  *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 21.  The State's burden of proof is clear and convincing evidence but the standard of review is highly deferential.  *Fry* at ¶ 22.  "The weight to be given the

evidence and the credibility of witnesses are primarily for the trier of the facts." *Id*. citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶17} Under circumstances such as this where a defendant is detained prior to giving consent to search, the legality of the detention is a "'predicate to an intelligent resolution'" of whether the consent was voluntarily. *State v. Robinette*, 80 Ohio St.3d 234, 236 (1997), quoting *Robinette*, 519 U.S. at 38. If the detention is unlawful, the State must demonstrate that the consent given was "an independent act of free will" under the totality of the circumstances and not merely the result of the illegal detention. *Robinette*, 80 Ohio St.3d at 245. This is an objective inquiry where the court must determine whether a reasonable person under the circumstances would feel free to decline the request for consent and otherwise terminate the encounter. *See Florida v. Bostick*, 501 U.S. 429, 438 (1991). On the other hand, if the detention was lawful, the State is merely required to demonstrate that the consent was voluntary. *See generally Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

{¶18} This is the difficult part of this case. The trial court here found that Genet-Morlan was taken into custody based on Officer Crawford's subjective belief regarding Genet-Morlan's custodial status, absent any indication that Officer Crawford conveyed his belief to Genet-Morlan at the scene.

{¶19} The majority correctly recognizes the distinction between taking a suspect into custody and merely conducting a temporary detention. *See Cleveland v. Oles*, 152 Ohio St.3d 1, 2017-Ohio-5834, ¶ 11. In this case, the trial court based its custody determination solely on its finding that Officer Crawford's testimony was that Genet-Morlan was "in custody and not free to leave after the pat-down." An officer's subjective belief that a suspect is in custody is irrelevant

to a custody determination unless that belief is conveyed to the suspect. *State v. Cabot*, 9th Dist. Lorain No. 09CA009725, 2010-Ohio-4064, ¶ 7.

{¶20} I find this case distinguishable on its facts from similar cases, such as *Cabot* or *Berkemer v. McCarty*, 468 U.S. 420 (1984), due to the definitive nature of Officer Crawford's testimony about Genet-Morlan's custodial status. As noted above, the State bears the burden at the suppression hearing. The State's key fact witness, Officer Crawford, testified on cross-examination that Genet-Morlan was "in police custody" at the time he gave consent and, further, that Genet-Morlan was not free to terminate the encounter. As the suppression hearing was drawing to a close, the trial court engaged in extensive questioning of Officer Crawford in an attempt to clarify the sequence of events that unfolded during the traffic stop. When asked to confirm his prior testimony that Genet-Morlan was "in custody" and "wasn't free to leave" at the moment he gave consent, Officer Crawford responded, "[r]ight." During closing arguments, the State argued that Officer Crawford conducted a lawful *Terry* stop, but it acknowledged that "the only real question" before the court was whether Genet-Morlan could give consent "given being in custody[.]" This case does not involve a scenario akin to *Cabot* or *Berkemer* where the officer testified as to his plan to take the defendant into custody. *Cabot* at ¶ 7; *Berkemer* at 441-442. Here, Officer Crawford indicated that Genet-Morlan was in custody at the time Officer Crawford sought consent to search the wallet.

{¶21} Candidly, it is unclear from the transcript whether Officer Crawford and the trial court were on the same page in regard to the meaning of the word "custody." Nevertheless, Officer Crawford testified on two separate occasions that Genet-Morlan was in custody and not free to leave at the time he gave consent. The trial court's analysis hinged on its finding that Genet-Morlan was in custody. As this was a warrantless search, it was the State's burden to

prove that the consent exception to the warrant requirement applied. The State did not meet its burden to demonstrate that Genet-Morlan's consent was an independent act of free will. *See Robinette*, 80 Ohio St.3d at 245. Accordingly, I would affirm the trial court because the State failed to meet its burden at the suppression hearing.

<u>APPEARANCES:</u>

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN and JOSEPH MCALEESE, Assistant Prosecuting Attorneys, for Appellant.

DONALD R. HICKS, Attorney at Law, for Appellee.