[Cite as *State v. Simin*, 2012-Ohio-4389.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26016 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| VITALY SIMIN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 09 04 1047 |

DECISION AND JOURNAL ENTRY

Dated: September 26, 2012

CARR, Judge.

{¶1} Defendant-Appellant, Vitaly Simin, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2} Shortly before 3:00 a.m. on March 21, 2009, Twinsburg Police Officer Jeremy Vecchio spotted a black BMW stopped at a green light on Route 82. Officer Vecchio pulled his cruiser behind the car, which was stopped in the left-hand lane of the three lane road. The car then crossed over two lanes without signaling to turn right onto the entrance ramp to Interstate 480. Officer Vecchio followed the car and witnessed several additional traffic violations. He then activated his overhead lights and stopped the car. When Officer Vecchio spoke with the car's driver, later identified as Simin, he detected a strong odor of alcohol coming from Simin. He also observed that Simin's eyes were glassy and bloodshot. Officer Vecchio asked Simin whether he had consumed any alcohol and Simin admitted that he had consumed "approximately

four beers." Officer Vecchio then performed two field sobriety tests. Simin stopped while performing the second test and refused to submit to further testing. Officer Vecchio then arrested Simin and transported him to the police station.

{¶3} Simin refused to consent to a breathalyzer test at the police station. Because Simin had five prior OVI convictions, the police transported Simin to a local hospital for a blood draw test. The blood draw test never took place, however, because Simin would not cooperate with the test and the hospital refused to perform a forced blood draw.

{¶4} A grand jury ultimately indicted Simin on the following counts: (1) two counts of operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(2), respectively; (2) tampering with evidence, in violation of R.C. 2921.12(A)(1); and (3) lanes of travel/weaving, in violation of R.C. 4511.25. The OVI counts also contained attendant specifications based on Simin's previously having been convicted of five or more OVI offenses in violation of R.C. 2941.1413. On June 3, 2009, Simin filed a motion to suppress, and the trial court later held a hearing. The court ultimately denied the motion and set the matter for trial. Before the trial began, the State dismissed the OVI charge based on a violation of R.C. 4511.19(A)(2) and its attendant specification.

{¶5} Simin's first jury trial resulted in a partial mistrial. Although the jury found Simin guilty of tampering, the jurors could not reach a verdict on the OVI count. The trial court set the matter for another jury trial on the OVI charge and took the lanes of travel/weaving charge under advisement due to its status as a minor misdemeanor. Simin's second trial resulted in a guilty verdict on the OVI charge. Additionally, the trial court found Simin guilty on the misdemeanor charge. The court sentenced Simin to a total of three years in prison.

{¶6} Simin's initial appeal from his convictions resulted in a dismissal, as this Court determined that his appeal was untimely. *State v. Simin*, 9th Dist. No. 25309, 2011-Ohio-3198. Simin then filed a motion for a delayed appeal, which this Court granted. Simin's appeal is now before this Court and contains nine assignments of error for our review. For ease of analysis, we consolidate and rearrange several of the assignments of error.

II.

### ASSIGNMENT OF ERROR NUMBER I

THE TRIAL COURT ERRED WHEN IT RULED THAT OFFICER VECCHIO HAD SUFFICIENT REASONABLE SUSPICION TO PULL OVER SIMIN AND THEN REQUIRE HIM TO SUBMIT TO FIELD SOBRIETY TESTS.

### ASSIGNMENT OF ERROR NUMBER II

THE TRIAL COURT ERRED TO THE PREJUDICE OF SIMIN WHEN IT DID NOT SUPPRESS SIMIN'S INCRIMINATING STATEMENTS MADE TO OFFICER VECCHIO AFTER HE WAS QUESTIONED WHILE IN HIS CUSTODY.

### ASSIGNMENT OF ERROR NUMBER III

THE TRIAL COURT ERRED TO THE PREJUDICE OF SIMIN WHEN IT ALLOWED INTO EVIDENCE AT TRIAL OFFICER VECCHIO'S ADMINISTRATION OF FIELD SOBRIETY TESTS[.]

{¶7} In his first three assignments of error, Simin argues that the trial court erred by denying his motion to suppress. He argues that the court should have suppressed the evidence stemming from Officer Vecchio's stop of his car because the officer (1) lacked reasonable suspicion to effectuate the stop and to perform field sobriety testing, (2) subjected Simin to custodial interrogation in the absence of a *Miranda* warning, and (3) failed to substantially comply with National Highway Traffic Safety Administration ("NHTSA") standards when administering a horizontal gaze nystagmus test.

**{¶8}** The Ohio Supreme Court has held that:

> [a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

**Reasonable Suspicion**

**{¶9}** Simin argues that Officer Vecchio lacked reasonable suspicion to stop his car because the dashcam recording from Officer Vecchio's cruiser did not capture any traffic violations. To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). This Court has repeatedly recognized that "[a]n officer may stop a vehicle to investigate a suspected violation of a traffic law." *State v. Slates*, 9th Dist. No. 25019, 2011-Ohio-295, ¶ 23, quoting *Akron v. Tomko*, 9th Dist. No. 19253, 1999 WL 1037762, *2 (Nov. 3, 1999). "Where an officer has an

articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid[.]" (Internal quotations, citations, and emphasis omitted.) *State v. Campbell*, 9th Dist. No. 05CA0032-M, 2005-Ohio-4361, ¶ 11.

{¶10} Officer Vecchio testified that he first spotted Simin's car at a green light shortly before 3:00 a.m. Once Officer Vecchio pulled his cruiser directly behind Simin in the left-hand lane, he then witnessed Simin cross over the middle lane and right-hand lane without signaling to enter Interstate 480. Officer Vecchio followed Simin onto the highway and further witnessed him make an abrupt lane change without signaling. After noting that Simin was traveling approximately 45 mph in a 65 mph zone and observing that Simin was weaving within his lane of travel, Officer Vecchio decided to stop Simin. He then activated his overhead lights and quickly brought Simin to a stop.

{¶11} Officer Vecchio explained that the recording device linked to his cruiser's dashcam is such that it only creates a recording when the cruiser's overhead lights are activated. Because Officer Vecchio did not activate his overhead lights until he and Simin traveled a ways on Interstate 480, his dashcam did not capture the other traffic violations he observed before deciding to stop Simin. Simin does not address the other traffic violations Officer Vecchio observed in his assignment of error. *See* App.R. 16(A)(7). Officer Vecchio's testimony that he witnessed Simin commit several traffic violations was sufficient to establish that Officer Vecchio engaged in a constitutionally valid stop of Simin's car. *Slates*, 2011-Ohio-295, at ¶ 23; *Campbell*, 2005-Ohio-4361, at ¶ 11. Simin's argument to the contrary lacks merit.

{¶12} Next, Simin argues that Officer Vecchio lacked reasonable suspicion to perform field sobriety testing. "[A] police officer does not need probable cause to conduct a field

sobriety test; rather, he must simply have a reasonable suspicion of criminal activity." *Slates* at ¶ 24. "[R]easonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act." *State v. Osburn*, 9th Dist. No. 07CA0054, 2008-Ohio-3051, ¶ 9, quoting *Wadsworth v. Engler*, 9th Dist. No. 2844-M, 1999 WL 1215151, *3 (Dec. 15, 1999).

{¶13} As previously noted, the traffic stop here occurred shortly before 3:00 a.m. and after Officer Vecchio observed Simin commit several traffic violations. When Officer Vecchio first approached Simin's car and spoke to him, he testified that he immediately detected a strong odor of alcohol coming from Simin. He also observed that Simin's eyes were glassy and bloodshot. Moreover, when he then asked Simin whether he had been drinking, Simin replied that he had consumed approximately four beers throughout the night. At that point, Officer Vecchio decided to perform field sobriety testing. Based on our review of the record, there were sufficient specific articulable facts to support a reasonable suspicion of criminal activity and to allow Officer Vecchio to conduct field sobriety testing. *See State v. Saravia*, 9th Dist. No. 25977, 2012-Ohio-1443, ¶ 11 (officer had reasonable suspicion for testing after he responded to a call for suspicious driving and observed the suspect's glassy, bloodshot eyes, smelled an odor of alcohol, and noted the suspect's difficulty in removing his identification from his walled); *State v. Balog*, 9th Dist. No. 08CA0001-M, 2008-Ohio-4292, ¶ 16 (officer properly sought to conduct testing after observing a marked lane violation, smelling a strong odor of alcohol upon speaking with the suspect, observing the suspect's glassy, bloodshot eyes, and receiving an admission from the suspect that he had been drinking). Simin's first assignment of error is overruled.

**Custodial Interrogation**

{¶14} Next, Simin argues that the trial court should have suppressed his admission to Officer Vecchio that he had been drinking because Officer Vecchio's questioning amounted to custodial interrogation in the absence of a *Miranda* warning. *Miranda* warnings are required only when an officer engages in custodial interrogation. *State v. Prunchak*, 9th Dist. No. 04CA0070-M, 2005-Ohio-869, ¶ 26. "Custody" for purposes of entitlement to *Miranda* rights exists only where there is a "'restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "[A] traffic stop alone does not render the person in 'custody' within the meaning of *Miranda*." *State v. Strehl*, 9th Dist. No. 10CA0063-M, 2012-Ohio-119, ¶ 10. More specifically, "an individual detained at a traffic stop is not in 'custody' for *Miranda* purposes until the individual has been formally arrested or subjected to a functional equivalent of a formal arrest." *Prunchak* at ¶ 27. Custody determinations depend on the facts and circumstances of each case. *Id.* at ¶ 26.

{¶15} The only incriminating statement Simin points to Officer Vecchio having unconstitutionally elicited was his admission that he had consumed several alcoholic beverages. Simin made this statement to Officer Vecchio while seated in his car, at some point after the stop took place and before any field sobriety testing occurred. Officer Vecchio testified that he asked Simin whether Simin had consumed any alcohol because he was conducting an interview to determine whether Simin was impaired. Officer Vecchio testified that he did not Mirandize Simin before he spoke with him because Simin was not in custody at that point. Officer Vecchio did not formally place Simin under arrest until Simin failed the field sobriety testing Officer Vecchio later conducted.

{¶16} Simin relies upon *Akron v. Kulasa*, 9th Dist. No. 19815, 2000 WL 353987 (Apr. 5, 2000), to argue that Officer Vecchio seized him, the seizure was tantamount to an arrest, and a *Miranda* warning was necessary. Initially, we note that *Kulasa* was not a *Miranda* case. *Kulasa* examined whether an "arrest" had occurred for purposes of allowing the police to perform blood alcohol content testing. *Kulasa* at *1-2. Further, the facts in *Kulasa* are wholly distinguishable from the instant facts. The *Kulasa* Court held that a defendant was under arrest when the police took him from his vehicle, placed him in a patrol car, discussed the removal of his car from the scene, and transported him to the police station for blood alcohol testing. *Id.* at *2-4. When Officer Vecchio spoke with Simin, the traffic stop had just occurred, Simin was seated in his car, the car was still running, and Officer Vecchio asked Simin a question for the stated purpose of determining whether his driving abilities were impaired. The facts and circumstances demonstrate that, at the time Officer Vecchio spoke with Simin, Simin was temporarily detained and not in custody. *See Prunchak*, 2005-Ohio-869, at ¶ 27-28; *Akron v. Miller*, 9th Dist. No. 22035, 2004-Ohio-7186, ¶ 24 ("Police at an initial stop are permitted to make inquiries without giving *Miranda* warnings."). *Compare State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 14 (suspect in custody where officer conducted pat down, took his keys, placed him in the cruiser, and told him a search of his vehicle would ensue). Consequently, we reject Simin's second assignment of error.

**Substantial Compliance**

{¶17} Finally, Simin argues that the trial court should have suppressed Officer Vecchio's testimony with regard to the field sobriety testing he performed, as the State failed to prove that Officer Vecchio substantially complied with NHTSA guidelines when he administered the tests. Simin relies upon *State v. Sunday*, 9th Dist. No. 22917, 2006-Ohio-2984.

{¶18} In *Sunday*, this Court recognized that for the results of field sobriety testing to be admissible the State must prove that its officer substantially complied with standardized procedures when administering a test. *Sunday* at ¶ 20-21. We held that when the State fails to prove that its officer "substantially complied with any recognizable, credible standardized testing procedure" the test results are inadmissible. *Id.* at ¶ 21. The officer who administered the field sobriety tests in *Sunday* did not testify which, if any, guidelines he followed to administer the test. Additionally, the State failed to submit a copy of NHTSA guidelines or some other equivalent manual so as to provide a point of reference for the officer's compliance. This Court concluded that the trial court should have suppressed the results of Sunday's field tests because "the State failed to establish through the officer's testimony or admission of a manual that the officer did in fact substantially comply with standardized testing procedures." *Id.* at ¶ 25.

{¶19} There is no dispute that the State did not introduce a copy of NHTSA guidelines in the court below. Unlike the officer in *Sunday*, however, Officer Vecchio repeatedly testified that he relied upon NHTSA guidelines in performing Simin's field tests. Officer Vecchio testified that he trained under NHTSA guidelines and explained, in detail, the two tests he administered: the horizontal gaze nystagmus test and the one-leg stand test. Officer Vecchio described the specific technique for each test and the point system established under NHTSA guidelines for determining intoxication. Officer Vecchio's testimony distinguishes this case from *Sunday*, in which the testing officer did not testify that he substantially complied with any specific guidelines. *See id.* at ¶ 23. Although the State did not do so in that case, *Sunday* recognized that the State may prove substantial compliance through officer testimony. *Id.* at ¶ 25. *Accord Columbus v. Murphy*, 10th Dist. No. 09AP-757, 2011-Ohio-949, ¶ 28.

{¶20} Simin argues that Officer Vecchio's testimony was insufficient to demonstrate substantial compliance because of several points his counsel elicited on cross-examination. During cross-examination, Officer Vecchio admitted that he received NHTSA guideline training in 2001 or 2002 and had not received any formal training on the guidelines since that time. Officer Vecchio could not identify which edition of the guidelines he trained under and was not sure if NHTSA had issued subsequent editions. Additionally, there were several points in his testimony on cross-examination where Officer Vecchio testified that he was not sure if the guidelines contained a certain prohibition, such as conducting a horizontal gaze nystagmus test while lights are visible within a subject's peripheral vision. Simin argues that the foregoing deficiencies in Officer Vecchio's testimony, when combined with the State's failure to produce a copy of NHTSA guidelines, support the conclusion that the State failed to prove substantial compliance.

{¶21} Assuming without deciding that Officer Vecchio's testimony was insufficient to demonstrate substantial compliance, we conclude that Simin has failed to demonstrate any prejudice as a result. *See Balog*, 2008-Ohio-4292, at ¶ 17. Officer Vecchio was only able to perform one test to completion: the horizontal gaze nystagmus test. Officer Vecchio testified that when he had Simin perform the next test, the one-leg stand test, Simin only held his leg up "for about two seconds." Simin then stated, absent any prompting, that he had failed the tests and "didn't want to do it anymore." "[T]he record reflects that [Simin] essentially quit the one-leg stand test before Officer [Vecchio] even finished administering it." *Id.* at ¶ 18. Simin's counsel did not challenge Officer Vecchio's knowledge of NHTSA guidelines with regard to the one-leg stand test or his administration of the test. Simin also fails to explain how he was

prejudiced by the admission of Officer Vecchio's testing results given the other evidence of probable cause to arrest contained within the record.

{¶22} "[T]he totality of the facts and circumstances can support probable cause for arrest even in the absence of the administration of field sobriety tests." *State v. Russo*, 9th Dist. No. 09CA0009-M, 2009-Ohio-6914, ¶ 10. Indeed, "the totality of the facts and circumstances can support a finding of probable cause to arrest even when the results of the field sobriety tests must be excluded for lack of compliance to standardized procedures." *Sunday*, 2006-Ohio-2984, ¶ 32. "Furthermore, '[r]egardless of a challenge to field sobriety tests, an officer may testify regarding his observations made during administration of the tests.'" *Slates*, 2011-Ohio-295, at ¶ 29, quoting *State v. Griffin*, 12th Dist. No. CA2005-05-118, 2006-Ohio-2399, ¶ 11.

{¶23} Officer Vecchio testified that he observed Simin commit multiple traffic violations at almost 3:00 a.m., smelled a strong odor of alcohol emanating from Simin when he spoke, and observed that Simin's eyes were glassy and bloodshot. Simin also admitted to Officer Vecchio that he had been drinking. Based on all of his observations as well as his experience and training, Officer Vecchio testified that Simin was intoxicated. Simin makes no attempt to explain how, in light of Officer Vecchio's other observations, he was prejudiced as a result of the admission of the field sobriety testing results. *See* App.R. 16(A)(7). Even absent the field sobriety testing results, the totality of the circumstances support Officer Vecchio's probable cause determination. *See Russo* at ¶ 11-12. As such, the trial court did not err by denying Simin's motion to suppress in its entirety. His third assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER IV

THE TRIAL COURT ERRED TO THE PREJUDICE OF SIMIN IN NOT DISMISSING THE TAMPERING WITH EVIDENCE (O.R.C. §2921.12(A)(1)) CHARGE AT THE CLOSE OF THE STATE'S CASE.

{¶24} In his fourth assignment of error, Simin argues that the trial court erred by refusing to dismiss the tampering with evidence charge. Specifically, he argues that his refusal to consent to testing does not constitute tampering.

{¶25} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. No. 24769, 2010-Ohio-634, ¶ 33. In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶26} "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). The Revised Code does not define the term "conceal," but this Court has recognized that "'[c]onceal' is defined as '"prevent[ing] disclosure or recognition of" and "plac[ing] out of sight[.]"' *State v. DuBois*, 9th Dist. No. 21284, 2003-Ohio-2633, ¶ 9, quoting *Webster's Ninth New Collegiate Dictionary* 271 (1986). The State's theory here was that, by refusing to submit to a breathalyzer or blood alcohol test, Simin knowingly concealed evidence in an ongoing investigation.

{¶27}  The Third District considered a similar argument in *State v. Freeman*, 3d Dist. No. 9-04-65, 2005-Ohio-5892.  Freeman was convicted for tampering with evidence based on his refusal to comply with a search warrant allowing the police to take a urine sample from him. The Third District overturned Freeman's conviction, holding that it was "unable to conclude that Freeman's mere refusal to provide a sample of urine constituted an overt act of 'concealment' as the term is employed in the [tampering] statute."  *Freeman* at ¶ 24.  The court explained that R.C. 2921.12(A)(1) requires "some overt act" and that "[a] mere failure to volunteer information has been held not to rise to the level of tampering with evidence."  *Id.* at ¶ 22.  *See also State v. Csizma*, 2d Dist. No. 9649, 1987 WL 10157, *3 (Apr. 13, 1987) ("We do not disagree with [the defendant's] * * * statement that 'a mere failure to volunteer information as to the existence of something is insufficient' [to have concealed evidence for purposes of tampering.]").  We are in agreement with the Third District's rationale.

{¶28}  Simin did not actively "conceal" evidence in this case by refusing to submit to a blood draw test.  His refusal was not an overt act.  *Freeman* at ¶ 22-25.  Moreover, R.C. Chapter 4511 specifically governs the type of refusal that occurred here.  R.C. 4511.19(A)(2) provides:

> No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:
>
> (a) Operate any vehicle * * * within this state while under the influence of alcohol * * *;
>
> (b) Subsequent to being arrested for operating the vehicle * * * as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

A suspect's refusal to take a chemical test is an element of the offense set forth in R.C. 4511.19(A)(2). *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, ¶ 21. A violation of R.C. 4511.19(A)(2) subjects a defendant to a longer mandatory minimum jail term than a violation of R.C. 4511.19(A)(1)(a). *Id.* Although the State initially charged Simin with a violation of R.C. 4511.19(A)(2), it dismissed that count prior to trial and instead pursued the tampering charge. Given that R.C. 4511.19(A)(2) specifically governs a subject's refusal to submit to chemical testing and a refusal to submit is not an overt act of concealment, we must conclude that Simin's argument has merit. *See State v. Cavalier*, 2d Dist. No. 24651, 2012-Ohio-1976, ¶ 54-56 (tampering statute does not encompass false statements knowingly made in the course of an investigation as false statements are governed by the crime of falsification); *Freeman* at ¶ 22-25.

{¶29} Because a suspect's mere refusal to submit to blood alcohol testing does not constitute tampering with evidence, the trial court erred by denying Simin's Crim.R. 29 motion. Simin's fourth assignment of error is sustained, and his tampering conviction is reversed pursuant to that determination.

**ASSIGNMENT OF ERROR NUMBER V**

AT THE RETRIAL, THE TRIAL COURT ERRED TO THE PREJUDICE OF SIMIN WHEN IT REFUSED TO EXCUSE FOUR JURORS FOR CAUSE AFTER THEY STATED THEY WOULD SHIFT THE BURDEN ON SIMIN TO PROVE HIS INNOCENCE BASED UPON THE ALLEGATION OF PRIOR OVI CONVICTIONS.

{¶30} In his fifth assignment of error, Simin argues that the trial court erred by not dismissing four perspective jurors for cause. We disagree.

{¶31} A juror may be challenged for cause on the basis that the juror possesses a bias against the defendant or is "of a state of mind evincing enmity." Crim.R. 24(C)(9). Yet:

[N]o person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the

accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

*Id.* "The determination of whether a prospective juror will follow the law as given by the court is within the discretion of the trial judge." *State v. Pruiett*, 9th Dist. No. 20518, 2001 WL 1647710, *5 (Dec. 26, 2001). Consequently, we generally review a trial court's ruling on a challenge for cause under an abuse of discretion standard of review. *State v. White*, 9th Dist. No. 24960, 2010-Ohio-2865, ¶ 7. "As long as a trial court is satisfied, following additional questioning of the prospective juror, that the juror can be fair and impartial and follow the law as instructed, the court need not remove that juror for cause." *State v. Moss*, 9th Dist. No. 24511, 2009-Ohio-3866, ¶ 11.

**{¶32}** During voir dire, four prospective jurors expressed their concern when they learned that Simin had five prior OVI convictions. All four prospective jurors indicated that they would expect the defense to have to prove Simin's innocence to some degree, given the extent of his prior history. After the trial court refused to dismiss the four prospective jurors for cause, Simin exercised his four peremptory challenges to strike all four jurors. He argues that, by not striking the four jurors for their admitted biases, the trial court prejudicially forced him to use his peremptory challenges.

**{¶33}** After receiving the foregoing answers from the four perspective jurors, the trial court conducted additional questioning. All four jurors indicated that they would follow any instructions of the court not to form any biases. The court also questioned the jurors as to whether they could remain fair and impartial. After speaking with the four prospective jurors, the trial court decided that they did not need to be struck for cause. "As a trial court has considerable discretion when determining a juror's ability to be impartial, we are unable to

conclude that the trial court abused its discretion when it denied [Simin's] challenge for cause." *State v. Kish*, 9th Dist. No. 02CA008146, 2003-Ohio-2426, ¶ 7. Simin's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER VI

THE TRIAL COURT ERRED TO THE PREJUDICE OF SIMIN WHEN IT CONVICTED HIM OF PRIOR OVI CONVICTIONS BASED UPON INSUFFICIENT EVIDENCE.

{¶34} In his sixth assignment of error, Simin argues that his OVI conviction is based on insufficient evidence. We disagree.

{¶35} We incorporate the sufficiency standard of review set forth in Simin's fourth assignment of error. R.C. 4511.19(A)(1)(a) provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol." If a person has previously been convicted of five or more equivalent offenses within twenty years of the offense, that person is guilty of a fourth-degree felony OVI. R.C. 4511.19(G)(1)(d). The offense is a misdemeanor if the State does not set forth evidence of any prior convictions. R.C. 4511.19(G)(1)(a).

{¶36} Simin argues that his fourth-degree felony OVI conviction must be vacated because the State did not set forth sufficient evidence of his prior convictions. He argues that, absent certified copies of the journal entries from his prior convictions, the State could not satisfy its burden.

{¶37} "When a prior conviction actually 'transform[s] the crime itself by increasing its degree [,] * * * [t]he prior conviction is an essential element of the crime and must be proved by the state.'" *State v. Patterson*, 9th Dist. No. 09CA0014-M, 2009-Ohio-6953, ¶ 6, quoting *State*

*v. Allen*, 29 Ohio St.3d 53, 54 (1987). R.C. 2945.75 governs prior convictions and provides as follows:

> (B)(1) Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.
>
> (2) Whenever in any case it is necessary to prove a prior conviction of an offense for which the registrar of motor vehicles maintains a record, a certified copy of the record that shows the name, date of birth, and social security number of the accused is prima-facie evidence of the identity of the accused and prima-facie evidence of all prior convictions shown on the record. The accused may offer evidence to rebut the prima-facie evidence of the accused's identity and the evidence of prior convictions. Proof of a prior conviction of an offense for which the registrar maintains a record may also be proved as provided in division (B)(1) of this section.
>
> (3) If the defendant claims a constitutional defect in any prior conviction, the defendant has the burden of proving the defect by a preponderance of the evidence.

The State relied upon R.C. 2945.75(B)(2) and introduced a certified copy of Simin's driving record through the testimony of Kathy Pritchard, the supervisor of reinstatement and keeper of records at the Bureau of Motor Vehicles. Pritchard testified that Simin had five prior OVI convictions, which took place on April 12, 1995; May 8, 1997; November 23, 1999; January 26, 2004; and April 5, 2005.

{¶38} In arguing that the State must produce certified copies of prior judgment entries to prove prior convictions, Simin relies upon case law applying the law prior to September 30, 2008. On that date, the General Assembly enacted the latest version of R.C. 2945.75. The latest version, quoted above, allows the State to produce a certified copy of a defendant's driving record from the registrar of motor vehicles, which constitutes prima facie evidence of the defendant's prior convictions. *Id.* In conformance with the statute, the certified copy that the State introduced included Simin's name, date of birth, and social security number. As such, the

State set forth prima facie evidence of Simin's prior convictions. *Id.* Simin did not claim any constitutional defect in his prior convictions. He merely argued that the State's proof was insufficient because the certified copy of his driving record did not indicate which particular statute his conviction fell under. The record only listed each offense as "OVI – ALCOHOL &/OR DRUG." R.C. 2945.75(B)(2), however, does not require the inclusion of the particular statute, code, or ordinance under which the State obtained a particular conviction. By statute, the State set forth prima facie evidence of Simin's five prior convictions, and Simin did not rebut the State's prima facie showing. Consequently, we must reject Simin's argument that the State failed to set forth sufficient evidence of his five prior convictions. Simin's sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER VII

THE TRIAL COURT ERRED TO THE PREJUDICE OF SIMIN WHEN IT INSTRUCTED THE JURY ON SIMIN'S REFUSAL OVER OBJECTION.

{¶39} In his seventh assignment of error, Simin argues that the trial court erred by instructing the jurors that they could consider his refusal to submit to a chemical test of his blood or breath in determining whether he was under the influence of alcohol because that instruction is obsolete. We disagree.

{¶40} This Court generally "review[s] a trial court's decision to give or decline to give a requested jury instruction for an abuse of discretion under the facts and circumstances of the case." *State v. Evans*, 9th Dist. No. 07CA0057-M, 2008-Ohio-4772, ¶ 12. In *Maumee v. Anistik*, 69 Ohio St.3d 339 (1994), syllabus, the Ohio Supreme Court held that a trial court may issue a refusal instruction to the jury if a person arrested for an OVI refuses to submit to chemical testing "and the reason given for the refusal is conditional, unequivocal, or a combination thereof * * *." The Court then approved specific language for such an instruction. *Id.* Simin does not

take issue with the language of the instruction the trial court read to the jury, as he acknowledges that the language complied with *Maumee*. Instead, he argues that the refusal instruction is now obsolete because post-*Maumee*, the legislature enacted R.C. 4511.19(A)(2) and criminalized a suspect's refusal to consent to testing by making it an essential element of that statute. *See* 2004 Am.Sub.H.B. No. 163.

{¶41} R.C. 4511.19(A)(2) does not apply here because the State dismissed that charge before trial. Moreover, we do not agree that R.C. 4511.19(A)(2) supplants the refusal instruction in *Maumee* as a matter of course. In addition to requiring the State to prove a defendant's refusal, R.C. 4511.19(A)(2) also requires the State to prove that a defendant "previously has been convicted of or pleaded guilty to a violation of this division, a violation of [R.C. 4511.19](A)(1) or (B) * * *, or any other equivalent offense * * *." The statute does not criminalize all refusals because it only applies to repeat offenders. Both the refusal element and the repeat offender element distinguish R.C. 4511.19(A)(2) from R.C. 4511.19(A)(1)(a), the only OVI statute upon which Simin went to trial.

{¶42} Contrary to his argument, any refusal on the part of Simin was not a material element of his crime. Simin's charge only required the State to prove that he operated a vehicle while under the influence of alcohol. R.C. 4511.19(A)(1)(a). Per *Maumee*, "[w]here a person has been arrested for driving while under the influence of alcohol and is requested by a police officer to submit to a chemical test of his or her breath, but he or she refuses to take the test, and the reason given for the refusal is conditional, unequivocal, or a combination thereof," the court may read a refusal instruction to the jury. *Maumee* at syllabus. The only issue presented in this assignment of error is whether, after the passage of 2004 Am.Sub.H.B. No. 163, the refusal instruction approved in *Maumee* may be given when a suspect is charged with violating R.C.

4511.19(A)(1)(a). We hold that the instruction still may be issued in accordance with *Maumee*.

Simin's seventh assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER VIII

AT THE SECOND TRIAL, THE TRIAL COURT ERRED TO THE PREJUDICE OF SIMIN WHEN IT REFUSED TO ALLOW INQUIRY INTO OHIO REVISED CODE §2935.20 AND HIS RIGHT TO COUNSEL AFTER ARREST, AND FURTHER DISALLOWED THE JURY TO BE INSTRUCTED IN THIS REGARD.

{¶43} In his eighth assignment of error, Simin argues that the trial court erred when it refused his requests to make the jury aware of his statutory right to counsel pursuant to R.C. 2935.20. He argues that the trial court's ruling prevented him from setting forth a defense because the fact that he had a right to have an attorney present before he submitted to chemical testing would have detracted from the State's argument that he refused to take the tests.

{¶44} R.C. 2935.20 provides as follows:

After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section.

The statute criminalizes the act of failing to provide an attorney in the foregoing circumstances and imposes either a fine or term of imprisonment for such a violation. *Id.* Even so, even an actual violation of the statute will not bar the admission of any results obtained from an otherwise admissible test. *State v. Griffith*, 74 Ohio St.3d 554, 555 (1996). The exclusionary

rule does not apply when the police violate an accused's statutory right to counsel. *Id. Accord Twinsburg v. Lacerva*, 9th Dist. No. 23849, 2008-Ohio-550, ¶ 7.

{¶45} The State played the recording of Simin's booking at trial. In the video, Officer Vecchio and another officer repeatedly asked Simin over a period of time whether he would submit to a blood draw. Simin offered several different responses, but the thrust of each was that he would not agree to a blood draw without a lawyer and a witness. Much of Simin's statements stemmed from his self-professed knowledge of the OVI laws, telling the officers at one point that after so many OVIs he knew his blood could not be drawn without a lawyer being present. Several times during the video, Officer Vecchio explained that the law changed since Simin's last OVI, but Simin rebuffed him stating "blood draw with a lawyer and a witness." Simin points to his references to a lawyer in the booking video as proof that he did not refuse a blood draw, but only conditioned his submitting to the test upon a request for counsel.

{¶46} Simin argues that the trial court erred by not allowing him to question the officers who testified about the existence of his statutory right to counsel. He further argues that the trial court erred by not instructing the jurors that they were to consider the denial of his statutory right to counsel in conjunction with his alleged refusal to submit to testing.

{¶47} Even assuming that the trial court erred in its handling of Simin's request to inform the jury that his refusal to submit to blood testing was not evidence of a consciousness of guilt because it was conditioned upon his seeking the advice of counsel, Simin cannot demonstrate any resulting prejudice given the other evidence in the record. First, Simin only discussed counsel with regard to the blood test the State sought to perform. Simin did not make any reference to counsel when he refused to submit to a breathalyzer test. He simply refused saying that he would "absolutely not at all" take the test. There is no reason that the refusal

instruction would not have applied to Simin's refusal to submit to the breathalyzer test. *See Maumee*, 69 Ohio St.3d at syllabus. Second, Simin refused to fully perform the field sobriety tests that Officer Vecchio sought to administer. Simin quit the one-leg stand test after "about two seconds" and stated that he failed. He then refused to submit to any further testing. He also admitted to Officer Vecchio that he had consumed approximately four beers that evening. Moreover, Officer Vecchio smelled an odor of alcohol emanating from Simin and observed that his eyes were glassy and bloodshot. Officer Vecchio testified that, in his opinion, Simin was intoxicated when Officer Vecchio stopped his car. The booking video the State played also depicts Simin behaving in an odd manner while conversing with the officers. Officer Marc Eleo confirmed that Simin repeated himself numerous times during the booking process and was, at times, argumentative. Simin also spent a great deal of time trying to engage the officers in discussion about who they voted for in the presidential election. Even apart from any refusal on Simin's part to submit to the blood test, therefore, the State presented sufficient evidence to support the jury's conclusion that Simin violated R.C. 4511.19(A)(1)(a) by operating a vehicle while intoxicated. Any error on the part of the trial court was not prejudicial based on the facts and circumstances presented here. Simin's eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER IX

THE TRIAL COURT ERRED TO THE PREJUDICE OF SIMIN WHEN IT SENTENCED HIM TO MANDATORY POST-RELEASE CONTROL.

{¶48} In his ninth assignment of error, Simin argues that the trial court erred by sentencing him to mandatory post-release control where his offenses only require a discretionary term of post-release control. The court's sentencing entry provided that Simin "is ordered to serve up to 3 years of post-release control." On February 22, 2010, the court then issued a nunc pro tunc sentencing entry providing that Simin "may be supervised on post-release control * * *

for a discretionary period of up to 3 years * * *." *See Simin*, 2011-Ohio-3198, at ¶ 9 (categorizing the court's February 22, 2010 sentencing entry as a nunc pro tunc entry). To the extent the court erred in its initial categorization of Simin's post-release control obligation in its initial sentencing entry, the court corrected its error via the nunc pro tunc entry. Simin's ninth assignment of error is overruled.

### III.

**{¶49}** Simin's fourth assignment of error is sustained, and his conviction for tampering with evidence is vacated pursuant to that determination. His remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
CONCURS

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

BRETT M. MANCINO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.