[Cite as *State v. Hayes*, 2023-Ohio-4769.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 22CA0066-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHRISTOPHER HAYES | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 21TRC04538 |

DECISION AND JOURNAL ENTRY

Dated: December 27, 2023

SUTTON, Presiding Judge.

{¶1}  Defendant-Appellant, Christopher Hayes, appeals the decision of the  Wadsworth Municipal Court.  For the following reasons, we affirm the judgment of the trial court.

I.

**Relevant Background Information**

{¶2}  Mr. Hayes was involved in a one-vehicle accident at 1130 Mattingly Road, Hinkley Township, Medina, Ohio.  At approximately 9:11 p.m., Officer Seth Miracle was dispatched to the scene of the accident.  Upon arrival, Officer Miracle encountered several individuals who had heard the crash, but did not actually see what occurred. As Officer Miracle approached the vehicle, Mr. Hayes was still seated in the driver's side of the vehicle and the airbags were deployed.

{¶3}  After investigating the accident, and performing field sobriety tests, Officer Miracle arrested Mr. Hayes for driving while under the influence of alcohol or drugs ("OVI"), in violation of R.C. 4511.19(A)(1)(a), and failure to control, in violation of R.C. 4511.202.  Mr. Hayes pleaded

not guilty and later moved to suppress certain evidence prior to trial. The trial court held a suppression hearing regarding whether: (1) Officer Miracle had reasonable, articulable suspicion to further detain Mr. Hayes for the purpose of conducting field sobriety tests; (2) Officer Miracle performed the field sobriety tests in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") standards and pursuant to R.C. 4511.19(D)(4)(b); and (3) Officer Miracle had probable cause to arrest Mr. Hayes. In denying Mr. Hayes' motion to suppress, the trial court determined Officer Miracle had reasonable, articulable suspicion to detain Mr. Hayes for field sobriety testing, the field sobriety tests were administered in substantial compliance, and Officer Miracle had probable cause to arrest Mr. Hayes.

{¶4} Following the trial court's ruling on Mr. Hayes' motion to suppress, Mr. Hayes pleaded no contest to the OVI and failure to control. The trial court sentenced Mr. Hayes to a $600.00 fine for the OVI and $150.00 fine for the failure to control, assessed six points against Mr. Hayes' driver's license, suspended Mr. Hayes' driver's license for one year dated back to September 8, 2021, giving him the full year's credit, and imposed three days of jail time with credit for three days for completing the driver intervention program.

{¶5} Mr. Hayes now raises three assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED WHEN IT FOUND THAT OFFICER MIRACLE HAD REASONABLE, ARTICULABLE SUSPICION TO DETAIN [MR. HAYES] TO PERFORM STANDARDIZED FIELD SOBRIETY TESTS.**

{¶6} In his first assignment of error, Mr. Hayes argues Officer Miracle lacked a reasonable and articulable suspicion to further detain Mr. Hayes in order to administer field sobriety tests. For the reasons below, this Court disagrees.

## Standard of Review

{¶7}    A motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.   "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Thus, a reviewing court gives deference to and "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982).  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, *citing State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶8}    This Court has addressed the constitutional protections afforded to drivers and what is required to overcome those rights.  As this Court stated:

> The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures.  "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment." *State v. Keserich*, 5th Dist. Ashland No. 14-COA-011, 2014-Ohio-5120, ¶ 8, quoting *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111, ¶ 17.  However, a police officer does not violate an individual's constitutional rights by administering field sobriety tests if the police officer has reasonable suspicion of criminal activity. *See State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 12.  "Reasonable suspicion requires that the officer 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Buchanan*, 9th Dist. Medina No. 13CA0041-M, 2014-Ohio-3282, ¶ 8, quoting *Terry v. Ohio,* 392 U.S. 1, 21 (1968).  Reasonable suspicion is based on the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417-418 (1981).

*State v. Hochstetler*, 9th Dist. Wayne No. 16AP0013, 2016-Ohio-8389, ¶ 10.  We note "no single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." *Id*. at ¶ 12.

## **Reasonable and Articulable Suspicion**

**{¶9}**    At the suppression hearing, Officer Miracle provided the following testimony:

[Mr. Hayes] was sitting in the driver's seat of the vehicle still, the airbags were deployed on the vehicle, and the Jeep was smashed into a guardrail, and it appeared that [Mr. Hayes] had traveled approximately forty yards or so through several lawns, striking several mailboxes, a culvert, and I believe a flower bed.

* * *

So when the vehicle hit the guardrail, it broke the guardrail and smashed into a tractor that was sitting at 1120 Mattingly Road causing damage to the tractor as well.

* * *

So when I walked up to [Mr. Hayes], I noticed that his eyes were glassy and bloodshot.  When I first made contact with him, I asked him what had happened, and he said, and I quote, "Just don't know."

So I asked him again what had happened, and he said, "[j]ust driving down the road here, mailbox and things went flying, car stopped, and here I am."

I asked him if he remembered what had happened and if he was familiar with the roadway, he said "no," but he had driven this roadway many times before.

Then I asked him if he had any alcohol to drink, and he said "no," but he swerved and missed something in the roadway and that's what caused the crash.

I asked him if he was on any type of medications.  He advised that he was on muscle relaxers and Motrin for a bad back.

So within that maybe minute-and-a-half, two minutes, the fire department came to assess him, so I allowed them to do their * * * thing,.  When they brought the cot in, we had [Mr. Hayes] sit on the cot, and then I asked him again when the last time was he took his medications, and he said around noon.

And then the fire department medic asked him if he swerved to miss anything, and then he said it was a deer, possibly an animal in the roadway.

* * *

[Mr. Hayes] appeared kind of shaken up a little bit, but again, he had glassy eyes and they were bloodshot, and I smelled a slight odor of an alcoholic beverage.  * * * [A]nd then with the fact of him admitting to taking medications as well, muscle

relaxers as prescribed, he said Motrin, but it turned out to be ibuprofen, and maybe those would be the contributing factor of the crash.

* * *

I then made contact with [Sergeant] Jared Singleton- and [] told him that I wasn't really sure if I smelled anything since I only talked to him for a short amount of time, wasn't really able to verify any type of an alcoholic beverage. * * * I thought maybe it was more drug-induced because of * * * the medications, [] and then once I looked them up, I found [] the bottle there, "May cause drowsiness" and "alcohol or marijuana may intensify the effects of the medication." So I [] knew [] he was on something[.]

* * *

So I looked through the vehicle. I noticed that he had a set of golf clubs and golf shoes in the back of the vehicle. I located the ibuprofen on the driver's side floorboard and the muscle relaxers were in the center console by the shifter.

* * *

So we decided to run him through some field sobriety tests, make sure [] what I was seeing and make sure that he was okay and that it wasn't a contributing factor to the crash. * * * I told him what I was going to be doing and asked him if he would be willing to submit to some filed sobriety tests, and he said he would.

* * *

{¶10} In determining Officer Miracle had reasonable and articulable suspicion to further detain Mr. Hayes to perform field sobriety tests, the trial court noted the following: (1) Mr. Hayes plainly caused his vehicle to "leave the road, travel across lawns, take out a [mailbox], and crash into the guardrail" at 9:11 p.m.; (2) Mr. Hayes' "evolving recollection of the crash[;]" (3) Mr. Hayes' admission to taking muscle relaxers and the warned side effects of drowsiness and dizziness, plus intensification if mixed with alcohol; (4) Mr. Hayes' red, glossy eyes; and (5) Mr. Hayes' "sluggish and languid" demeanor.

{¶11} In his brief, Mr. Hayes challenges these "findings" and argues they are not supported by competent, credible evidence. However, in reviewing the dash camera video, body

camera video, and Officer Miracle's testimony at the suppression hearing, this Court disagrees. Mr. Hayes did, in fact, cause his vehicle to travel off the road, go through several lawns, hit a mailbox and flower bed, crash into a guardrail and hit a tractor. When asked how the accident happened, Mr. Hayes could not give a logical answer and responded, "just don't know." Mr. Hayes then added: "[j]ust driving down the road here, mailbox and things went flying, car stopped, and here I am." After Officer Miracle asked Mr. Hayes if he had any alcoholic beverages, Mr. Hayes then indicated he swerved to miss something in the road and later suggested it may have been a deer. The body camera video also shows Mr. Hayes having very little affect while sitting in his vehicle, and speaking in a slow, monotone manner. Further, the body camera video indicates the muscle relaxer bottle warned against drowsiness and dizziness, which can be exacerbated in conjunction with alcohol and marijuana. Mr. Hayes also admitted to taking the muscle relaxers that day. Lastly, Officer Miracle testified Mr. Hayes had glassy, bloodshot or red eyes, and he thought he smelled a slight odor of alcoholic beverage, although he could not verify the type of alcoholic beverage.

{¶12} Thus, in viewing the totality of the circumstances, we conclude Officer Miracle had reasonable, articulable suspicion to prolong Mr. Hayes' detention for the purpose of conducting field sobriety tests.

{¶13} Accordingly, Mr. Hayes' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN CONSIDERING THE [WALK AND TURN] AND [ONE LEG STAND] FIELD SOBRIETY TESTS WHEN THEY WERE NOT DONE IN SUBSTANTIAL COMPLIANCE WITH THE NHTSA MANUAL.**

{¶14} In his second assignment of error, Mr. Hayes argues the trial court erred by concluding Officer Miracle administered the walk and turn ("WAT") and one leg stand ("OLS") field sobriety tests in substantial compliance with the NHTSA manual. Specifically, regarding the WAT test, Mr. Hayes argues Officer Miracle failed to instruct Mr. Hayes on how to perform the 180 degree turn when he reached his ninth step, and failed to inform him not to stop once he began the test. Further, regarding the OLS test, Mr. Hayes argues Officer Miracle failed to instruct him to keep his hands at his sides three times as required by the NHTSA manual.

### Standard of Review for Field Sobriety Tests

{¶15} R.C. 4511.19 requires that in order for the results of field sobriety tests to be admissible, the tests must have been administered in substantial compliance with standardized procedures. R.C. 4511.19; *see also State v. Lytle*, 9th Dist. Medina No. 04CA0016-M, 2004-Ohio-4964, ¶ 5. The State can introduce the results of field sobriety tests if:

> a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration [.]

*State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 20, quoting R.C. 4511.19(D)(4)(b). Accordingly, the burden of establishing substantial compliance on the part of the administering officer is on the State, as part of its case in chief. *Id*. at ¶ 21. These testing standards include the NHTSA guidelines. *Id*.

### Administration of Field Sobriety Tests

{¶16} Officer Miracle administered three field sobriety tests to Mr. Hayes. Mr. Hayes, however, only challenges the WAT and OLS tests. According to the record, Officer Miracle was

unable to complete the horizontal gaze nystagmus test because Mr. Hayes did not comply with directions to hold his head still and follow the stimulus only with his eyes. Mr. Hayes did not properly focus on the stimulus, and Officer Miracle could not score the test. Officer Miracle then moved forward with the WAT and OLS tests.

**WAT**

{¶17} At the suppression hearing, Officer Miracle testified regarding the WAT test as follows:

> I had [Mr. Hayes] stand up[.] I told him the next set of tests that I was going to have him do was the [WAT] test. He said he would be fine to do it.
>
> So I had him stand with his left foot on the line, on the center line down the roadway, with his right foot in front of it, touching heel-to-toe, and I demonstrated that to him.
>
> He was not touching heel-to-toe, so I asked him again, "Are you touching heel-to-toe?" So he looked down and then tried to correct himself.
>
> When I asked him again to touch heel-to-toe, he didn't do it. His right foot was off a little bit and it wasn't []straight.
>
> So I continued with the instructions. I told him that he was going to take nine heel-to-toe steps down the line and he was going to turn and take nine heel-to-toe steps back. I told him "[t]ouching heel-to-toe."
>
> So I told him on the turn he was to keep his front foot on the line and take a series of small steps around his front foot and then take nine heel-to-toe steps back, and I demonstrated that to him, and then I asked him if he understood the instructions and he said "yes," then I had him begin the test.
>
> * * *
>
> He displayed four out of eight clues on the [WAT] test, which was he was unable to stand in a heel-to-toe manner when the instructions were given, he lost balance while walking, he turned incorrectly, and he also stepped off the line with both feet on the turn and stopped to gain control as he almost lost balance as well.
>
> * * *

**OLS**

{¶18} Further, Officer Miracle testified regarding the OLS test as follows:

So I had him stand with his feet together. What I didn't do until the end was tell him [] not to start until the instructions were given and the test was demonstrated, so I just started with explaining the test to him.

So I told him, "[w]hen I tell you to begin, you're going to raise one leg, either leg, approximately six inches off the ground, keeping your raised foot parallel with the ground. You're going to count in the prescribed manner, one thousand one, one thousand two, one thousand three, and so on and so forth until I tell you to stop."

I told him to keep his arms down at his sides, keeping his foot raised, [] I said counting his steps out loud even though I meant counting [] the prescribed numbers out loud, and look at this feet at all times.

* * *

So he displayed three out of four clues, swayed while balancing, [] used his arms for balance, and put his foot down four separate times.

* * *

The trial court, in denying Mr. Hayes' motion to suppress, concluded the State showed by clear and convincing evidence that Officer Miracle conducted the WAT and OLS field sobriety tests in substantial compliance with the NHTSA guidelines.

{¶19} Upon our independent review of the record, including the NHTSA guidelines, dash camera videos, and Officer Miracle's testimony, we cannot say the trial court erred in denying Mr. Hayes' motion to suppress on these issues. Officer Miracle explained each test to Mr. Hayes, in detail, and demonstrated each test prior to having Mr. Hayes begin the testing. Officer Miracle asked Mr. Hayes if he understood the instructions and if he felt he could perform each test in light of his back issues. Mr. Hayes responded affirmatively in both respects.

{¶20} As to the WAT test, the dash camera video corroborates Officer Miracle both explained and demonstrated the 180 degree turn, although he said to "pivot" around your front foot instead of to take a "series of small steps" around your front foot. However, Officer Miracle

demonstrated the turn, and Mr. Hayes indicated he understood the instructions. Further, regarding the OLS test, Officer Miracle did instruct Mr. Hayes to keep his arms at his sides, at least once, and also demonstrated the test before Mr. Hayes began testing. ("A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Sayler*, 9th Dist. Medina No. 15CA0094-M, 2016-Ohio-7083, ¶ 15, quoting *State v. Fink*, 12th Dist. Warren Nos. CA2008–10–118, CA2008-10-119, 2009-Ohio-3538, ¶ 26.)

**{¶21}** Accordingly, Mr. Hayes' second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN FINDING THAT OFFICER MIRACLE HAD PROBABLE CAUSE TO ARREST [MR. HAYES] UNDER THE TOTALITY OF THE CIRCUMSTANCES.**

**{¶22}** In his third assignment of error, Mr. Hayes argues Officer Miracle lacked probable cause to arrest him.

**{¶23}** "[T]his Court reviews a probable cause determination de novo." *State v. Russo*, 9th Dist. Medina No. 09CA0009-M, 2009-Ohio-6914, ¶ 6, quoting *Sunday* at ¶ 28. Before an officer may effectuate a warrantless arrest, he must have probable cause that the suspect is engaging in criminal activity. *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11. An officer has probable cause to arrest a person for driving under the influence of alcohol "if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." *State v. Kurjian*, 9th Dist. Medina No. 06CA0010-M, 2006-Ohio-6669, ¶ 17, quoting *In re V.S.*, 9th Dist. Summit No. 22632, 2005-Ohio-6324, ¶ 13.

{¶24} In the matter before us, the trial court found the following factors supported a finding of probable cause: (1) the accident occurred at 9:11 p.m. in the evening; (2) Mr. Hayes' eyes were red and glossy; (3) Mr. Hayes admitted to taking muscle relaxers; (4) the muscle relaxer bottle warned against side-effects such as drowsiness and dizziness which can be exacerbated by alcohol; (5) Mr. Hayes' evolving explanation of the reason for the accident; (6) Mr. Hayes' sluggish and languid body manner and demeanor in the body camera video; (7) the single vehicle accident, distance Mr. Hayes travelled, and damage caused by Mr. Hayes' vehicle; (8) Mr. Hayes' refusal to take the portable breath test; (9) Mr. Hayes' performance on the field sobriety tests; and (10) information from Mr. Hayes' wife that he was heading home after a golf outing.

{¶25} A review of the record indicates these facts are supported by the video evidence and the testimony presented at the suppression hearing. Based on the totality of the facts and circumstances available to him at the time of the arrest, we conclude Officer Miracle had probable cause to arrest Mr. Hayes.

{¶26} Accordingly, Mr. Hayes' third assignment of error is overruled.

III.

{¶27} For these reasons, Mr. Hayes' three assignments of error are overruled and the judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

GREGORY A. HUBER, Prosecuting Attorney, for Appellee.