[Cite as *State v. Tucholsky*, 2023-Ohio-3292.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| COUNTY OF MEDINA | )ss: | NINTH JUDICIAL DISTRICT |
| | ) | |

| STATE OF OHIO | C.A. No. 22CA0009-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NATALIE TUCHOLSKY | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 20TRC04294 |

DECISION AND JOURNAL ENTRY

Dated: September 18, 2023

HENSAL, Presiding Judge.

{¶1} Natalie Tucholsky appeals the granting of the State's motion in limine and the denial of her motion to suppress by the Medina Municipal Court. For the following reasons, this Court affirms.

I.

{¶2} Officer Jacob Getto responded to the home of Ms. Tucholsky's then-estranged husband, who reported that Ms. Tucholsky had broken one of the windows and damaged his truck. He also said that Ms. Tucholsky only acts like that when she has been drinking a lot. A little while after Officer Getto left the husband's residence, the husband called the police again to report that Ms. Tucholsky had returned and thrown empty beer cans into the yard. Officer Getto drove back to the home and observed the beer cans but did not see Ms. Tucholsky. Shortly thereafter, he spotted a vehicle matching the description of Ms. Tucholsky's vehicle and initiated a traffic stop,

even though he had not observed the driver speeding, travelling outside their lane, or any other indicia of impairment.

{¶3} The driver of the vehicle was Ms. Tucholsky. She pulled into a driveway and began to get out, but Officer Getto asked her to remain in the vehicle. He approached and began speaking to Ms. Tucholsky. According to the officer, Ms. Tucholsky's eyes were glassy and he had to ask her to slow down because she was speaking quickly. When he asked for her driver's license, she initially gave him her debit card. When he returned the debit card to her, Ms. Tucholsky attempted to place it on the inside of her door, but it fell to the ground. Ms. Tucholsky did not appear to notice, and, after a minute, Officer Getto picked it up and gave it back to her again. When Officer Getto asked if Ms. Tucholsky had been drinking, she initially stated that she had consumed a Michelob Ultra beer. Later, she reported drinking two of them. Officer Getto did not testify whether he could detect any odor of alcohol on Ms. Tucholsky's breath, but he did testify that she became emotional and teary-eyed after confiding that she had recently been diagnosed with a serious medical condition.

{¶4} After speaking with Ms. Tucholsky, Officer Getto wanted to verify whether she would be safe to continue driving. He directed her to exit her vehicle and administered the horizontal gaze nystagmus ("HGN") test. Following that test, Officer Getto arrested Ms. Tucholsky for operating a vehicle under the influence of alcohol. At the police station, Ms. Tucholsky submitted to a breath test on an Intoxilyzer 8000 machine. Officer Getto ended up citing Ms. Tucholsky for operating a vehicle under the influence of alcohol under Revised Code Section 4511.19(A)(1)(a) and operating a vehicle with a prohibited concentration of alcohol in her breath, in violation of Section 4511.19(A)(1)(d).

{¶5} Ms. Tucholsky moved to suppress the evidence against her, arguing that Officer Getto did not have reasonable suspicion to stop her or continue detaining her to perform field sobriety tests, that he did not conduct the HGN test correctly, that he did not have probable cause to arrest her, and that the breath test results were invalid. She retained an expert witness on breath testing, but the municipal court did not allow him to testify at the hearing on her motion to suppress because he did not file an expert report by a certain deadline. Following the hearing, the municipal court denied Ms. Tucholsky's motion to suppress. She subsequently pleaded no contest to the offenses. After finding Ms. Tucholsky guilty and merging the offenses, the municipal court sentenced her to 60 days in jail. Ms. Tucholsky has appealed, assigning three errors. Because our disposition of the first two assignments of error is related, we will address them together.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED THE STATE'S MOTION *IN LIMINE* TO EXCLUDE THE DEFENDANT'S EXPERT WITNESS FROM TESTIFYING AT THE *SUPPRESSION HEARING* ON THE GROUNDS THAT THE DEFENDANT FAILED TO TIMELY SUPPLY AN EXPERT'S REPORT *IN ADVANCE OF THE SUPPRESSION HEARING* WHICH WAS LATER CONTINUED IN CONTRAVENTION OF CRIM. R. 16(K).

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE BREATH TEST RESULT WHERE THE STATE FAILED TO COMPLY WITH OAC §3701-53-04(B) & (C) BY SHOWING THAT THE DRY GAS STANDARD WAS TRACEABLE TO THE NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY (NIST).

{¶6} In her first assignment of error, Ms. Tucholsky argues that the municipal court incorrectly granted the State's motion in limine, which prohibited her expert witness from testifying at the hearing on her motion to suppress. In her second assignment of error, she argues that the municipal court should have suppressed the results of her breath test because the State did

not establish that the dry gas control used by the Intoxilyzer 8000 machine complied with Ohio's administrative requirements.

{¶7} Before considering the merits of Ms. Tucholsky's assignments of error, we must determine whether it is appropriate to address them. As previously noted, Ms. Tucholsky pleaded no contest to one count of operating a vehicle under the influence of alcohol under Revised Code Section 4511.19(A)(1)(a) and one count of operating a vehicle with a prohibited concentration of alcohol in her breath, in violation of Section 4511.19(A)(1)(d). At sentencing, the municipal court merged the prohibited-breath-concentration count into the general under-the-influence count and only sentenced Ms. Tucholsky on the under-the-influence count.

{¶8} When a court merges offenses, they become a single conviction. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 17. Accordingly, although Ms. Tucholsky pleaded no contest to multiple offenses, she was only convicted of one offense, which was operating a vehicle under the influence of alcohol, in violation of Section 4511.19(A)(1)(a).

{¶9} Regarding her first assignment of error, Ms. Tucholsky proffered that the expert witness she intended to call at the hearing on her motion to suppress would have addressed whether the dry gas standard in the Intoxilyzer 8000 machine complied with the State's administrative requirements. Regarding her second assignment of error, Ms. Tucholsky challenges whether the State established that the dry gas standard complied with those requirements. The results of the Intoxilyzer 8000 test pertain to whether Ms. Tucholsky operated a vehicle with a prohibited concentration of alcohol in her breath, in violation of Section 4511.19(A)(1)(d). Ms. Tucholsky was not convicted of that offense, however, because it merged into the Section 4511.19(A)(1)(a) offense at sentencing.

{¶10} A conviction for operating a vehicle under the influence under Section 4511.19(A)(1)(a) "focuses on the conduct of the defendant and observations of the arresting officers, rather than the results of a chemical test or breathalyzer exam as does R.C. 4511.19(A)(1)(d)." *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 24. "Accordingly, [Ms. Tucholsky's] arguments regarding the admissibility of the results of the breathalyzer exam are completely irrelevant to [her] conviction for violating R.C. 4511.19(A)(1)(a)." *Id.* When Ms. Tucholsky pleaded no contest to the Section 4511.19(A)(1)(a) count, she "admitted the truth of the facts substantiating the elements of that charge." *Id.* "The results of [a] breath test are not necessary or required to sustain the trial court's finding of guilt after [a] no contest plea to a violation of R.C. 4511.19(A)(1)(a). Thus, any issues regarding the admissibility of the results of the breathalyzer exam are moot." *Id.*; *State v. Perry*, 12th Dist. Preble No. CA2017-01-002, 2017-Ohio-7214, ¶ 14 (declining to address validity of blood draw because the municipal court's decision to deny motion to suppress had no bearing on defendant's conviction under Section 4511.19(A)(1)(a)).

{¶11} Because Ms. Tucholsky was convicted of operating a vehicle under the influence under Section 4511.19(A)(1)(d) and not of operating a vehicle with a prohibited concentration of alcohol in her breath under Section 4511.19(A)(1)(d), her arguments concerning the administration of the breath test are moot.[1] Ms. Tucholsky's first and second assignments of error are overruled on that basis.

---

[1] We recognize that this Court has addressed the merits of similar arguments in prior cases. *E.g. State v. Gubanich*, 9th Dist. Medina No. 21CA0054-M, 2022-Ohio-2815; *State v. Palacios*, 9th Dist. Lorain No. 17CA011093, 2018-Ohio-3523. It does not appear that mootness was addressed by the majority opinion in those decisions, however, and they do not override the fact that this Court lacks authority to address the substance of assignments of error that are moot. *In re A.B.*, 9th Dist. Lorain No. 16CA010927, 2017-Ohio-4344, ¶ 17; *see State v. Berndt*, 29 Ohio

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS WHERE THE EVIDENCE SHOWED THE ARRESTING OFFICER LACKED REASONABLE, ARTICULABLE SUSPICION TO ARREST, FAILED TO ADMINISTER THE HGN IN SUBSTANTIAL COMPLIANCE WITH HIS NHTSA TRAINING, AND LACKED PROBABLE CAUSE TO ARREST.

**{¶12}** In her third assignment of error, Ms. Tucholsky argues that Officer Getto did not have reasonable, articulable suspicion to continue detaining her so that she could perform a field sobriety test, that he did not administer the HGN test in substantial compliance with applicable standards, and that he did not have probable cause to arrest her for operating a vehicle under the influence of alcohol. The observations of Officer Getto during the traffic stop pertain to Ms. Tucholsky's conviction for operating a vehicle under the influence under Section 4511.19(A)(1)(a), so this assignment of error is not moot. *See Gladman*, 2014-Ohio-2554, at ¶ 24.

**{¶13}** A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). This Court,

St.3d 3, 5 (1987) (explaining that it is reversible error for an appellate court to decide an appeal that is moot).

therefore, grants deference to the trial court's findings of fact but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist.).

**{¶14}** Ms. Tucholsky does not challenge the initial stop of her vehicle based on the information that Officer Getto had gathered from her then spouse. She argues, however, that the officer did not have reasonable suspicion to continue detaining her in order to administer field sobriety tests.

**{¶15}** The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment." *State v. Keserich*, 5th Dist. Ashland No. 14-COA-011, 2014-Ohio-5120, ¶ 8, quoting *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111, ¶ 17. An officer does not violate an individual's constitutional rights by administering field sobriety tests, though, if the officer has reasonable suspicion of criminal activity. *See State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 12; *see also State v. Compton*, 9th Dist. Medina No. 22CA0018-M, 2022-Ohio-4324, ¶ 12 (explaining that a traffic stop may be prolonged to investigate reasonable suspicions of additional criminal activity). "Reasonable suspicion requires that the officer 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Buchanan*, 9th Dist. Medina No. 13CA0041-M, 2014-Ohio-3282, ¶ 8, quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion is based on the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417-418 (1981). "[T]hese cases often present close calls, both for the courts and the law enforcement officers on the scene." *State v. Hall*, 5th Dist. Stark No. 2015 CA 00213, 2016-Ohio-5787, ¶ 26. "[N]o single

factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." *State v. Hochstetler*, 9th Dist. Wayne No. 16AP0013, 2016-Ohio-8389, ¶ 12.

{¶16} The municipal court found that Officer Getto had evidence that Ms. Tucholsky had recently operated her vehicle. He had also received a report that she had engaged in criminal, property-damaging behavior and had thrown beer cans from her vehicle. When he spoke to her, she admitted having consumed alcohol and prescription medication related to her medical conditions. She also increased her reported alcohol consumption when Officer Getto asked her about it a second time. The court found that Ms. Tucholsky produced a debit card when asked for her driver's license and subsequently dropped the card on the ground without noticing. There was also a report from Ms. Tucholsky's then spouse that she may be intoxicated.

{¶17} Ms. Tucholsky does not contest the municipal court's findings. She argues, however, that other indicators of intoxication were not present. She notes that her eyes were not bloodshot, her speech was clear, articulate, and not slurred, she did not stumble or sway upon exiting her vehicle, her driving was not erratic, she did not have any scrapes, bruises, or soiled clothing, and she was polite and cooperative with Officer Getto throughout their interaction.

{¶18} Upon review of the record, we conclude that Officer Getto had reasonable, articulable suspicion to extend the duration of the traffic stop to administer field sobriety tests to Ms. Tucholsky. She admitted consuming multiple beers before driving, was inconsistent about the amount of her consumption, and exhibited deficits in her coordination and attention. Under these circumstances, it was reasonable for Officer Getto to extend the traffic stop to further investigate whether Ms. Tucholsky had operated a vehicle under the influence of alcohol.

{¶19} Ms. Tucholsky next argues that the municipal court should have suppressed the results of the HGN test because Officer Getto did not administer it correctly. Under Section 4511.19(D)(4)(b), the prosecution may introduce the results of a field sobriety test if it was administered in substantial compliance with applicable testing standards. According to Ms. Tucholsky, Officer Getto did not comply with the testing standards for the HGN test because he moved the stimulus too quickly during the lack of smooth pursuit subtest, failed to hold the stimulus still for four seconds at maximum deviation during the first and two passes of that subtest, and did not verify nystagmus prior to 45 degrees. The municipal court found that there were slight deviations from the testing standard, which included a slightly accelerated stimulus speed during the lack of smooth pursuit subtest and failing to hold a stimulus at maximum deviation for four seconds during two of the four passes of that subtest. The court found that there was no evidence that contradicted Officer Getto's testimony that he verified nystagmus prior to 45 degrees. The court concluded that the nature and magnitude of the testing deviations did not deprive it of a belief that the test was administered in substantial compliance with applicable standards.

{¶20} "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Sayler*, 9th Dist. Medina No. 15CA0094-M, 2016-Ohio-7083, ¶ 15, quoting *State v. Fink*, 12th Dist. Warren Nos. CA2008-10-118, CA2008-10-119, 2009-Ohio-3538, ¶ 26. Regarding the lack of a smooth pursuit subtest, the National Highway Traffic Safety Administration manual provides that the stimulus must be moved steadily from a center position to a side at a speed that takes approximately two seconds. Upon review of Officer Getto's body camera, it appears that he complied with that standard. Regarding the maximum deviation subtest, the manual provides that the stimulus should be moved out to a side until the eye has gone as far as possible and that the stimulus should then be held at that position for a minimum of four

seconds. Upon review of the body camera footage, Officer Getto complied with that standard at least once for each eye.

{¶21} Regarding the onset of nystagmus prior to 45 degrees subtest, Ms. Tucholsky argues that Officer Getto did not verify nystagmus during that subtest. According to the instructions for that part of the test, if the officer sees a jerking of the eye while moving the stimulus, the officer should stop moving the stimulus and verify whether the jerking continues. If it does not, that means the point of onset has not been determined and the officer should resume moving the stimulus outward until the jerking is noticed again. The body camera footage establishes that Officer Getto stopped moving the stimulus while performing the subtest. Whether he observed nystagmus before he stopped moving the stimulus and whether he continued to observe nystagmus at the point where he stopped moving the stimulus relates to whether he should have registered a clue for that subtest, not whether the test was conducted in substantial compliance with applicable standards. Upon review of the record, we conclude that Ms. Tucholsky has not established that Officer Getto failed to substantially comply with NHTSA standards when administering the HGN test.

{¶22} Ms. Tucholsky also argues that Officer Getto did not have probable cause to arrest her. "[T]his Court reviews a probable cause determination de novo." *State v. Russo*, 9th Dist. Medina No. 09CA0009-M, 2009-Ohio-6914, ¶ 6, quoting *State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 28. "The legal standard for probable cause to arrest for OVI is whether 'at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" *State v. Krzemieniewski*, 9th Dist. Medina No.

15CA0015-M, 2016-Ohio-4991, ¶ 11, quoting *State v. Homan*, 89 Ohio St.3d 421, 427 (2000), superseded by statute on other grounds.

{¶23} Ms. Tucholsky argues that Officer Getto did not observe any erratic driving, she did not sway while standing or stumble while walking, she did not have slurred speech, she did not have bloodshot eyes, and she did not have an odor of alcohol. She also argues that this Court should not consider the results of the HGN test because it was not done in substantial compliance with the test's requirements. She also argues that her then husband's allegations about her behavior were not credible, noting that they were going through a divorce at the time. She further argues that talking quickly and tearing up over a serious medical diagnosis are not signs of impairment and notes that she suggested that someone could drive her car home, which demonstrated that she was thinking clearly.

{¶24} Ms. Tucholsky stumbled as she got into the required stance for administration of the HGN test. She moved her head multiple times throughout the test instead of just her eyes and interrupted the test a few times to explain something to Officer Getto, apologize for not following the instructions, or swat away an insect. Officer Getto observed six out of six clues while administering the HGN. According to the test manual, only four clues are necessary to imply that the test subject's blood alcohol content is above 0.08. Thus, even if Officer Getto failed to properly verify whether nystagmus began before 45 degrees, four out of six clues would remain, still implying that Ms. Tucholsky was intoxicated. Upon review of the record, we conclude that the HGN test result, together with Ms. Tucholsky's admission of alcohol consumption and her husband's allegations about her erratic and criminal behavior, were sufficient to cause a reasonable prudent person to believe that Ms. Tucholsky had operated a vehicle under the influence of alcohol. Ms. Tucholsky's third assignment of error is overruled.

III.

**{¶25}** Ms. Tucholsky's assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

DAVID C. SHELDON, Attorney at Law, for Appellant.

GREGORY HUBER, J. MATTHEW LANIER, MEGAN A. PHILBIN, and ROBERT B. CAMPBELL, Prosecuting Attorneys, for Appellee.