[Cite as *State v. Acres*, 2025-Ohio-1592.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | | C.A. Nos. 2024CA0072-M |
|---|---|---|
| Appellee | | 2024CA0073-M |
| v. | | |
| LOGAN ACRES | | APPEAL FROM JUDGMENT ENTERED IN THE MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO CASE Nos. 23CRB00705 23TRC03481 |
| Appellant | | |

DECISION AND JOURNAL ENTRY

Dated: May 5, 2025

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant Logan Acres appeals an order of the Medina Municipal Court that denied in part his motion to suppress and found that the sergeant was engaging in a community caretaking function when she approached his truck; the sergeant had a reasonable and articulable basis to extend the stop and investigate for operating a vehicle while intoxicated; the State had shown by clear and convincing evidence that the sergeant conducted the walk and turn test in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") standards; and that the breath test was conducted in substantial compliance with the Ohio Administrative Code. This Court affirms.

I.

{¶2} Hinkley Township Police Sergeant Jessica Parente was working patrol duty around 12:50 a.m. in June 2023 when she observed a truck parked on the side of the roadway with its

hazard lights activated. It was dark with little traffic on the roadway. Sergeant Parente decided to check on the truck's occupant "in the interest of community caretaking[.]"

{¶3} Sergeant Parente pulled behind the truck and activated the lights on her cruiser. She activated the cruiser's lights "because it was so dark out and late[]" and she didn't want the truck's occupant "to think that some random person is pulling up behind him[.]"

{¶4} Sergeant Parente approached the driver's side of the truck. Mr. Acres was in the driver's seat of the truck and the only occupant of the vehicle. Mr. Acres told Sergeant Parente that he had pulled to the side of the road to talk to his dad and that he had just learned that his grandfather had passed away. Sergeant Parente immediately smelled "the odor of alcohol" coming from the truck and she observed that Mr. Acres' "eyes were exceptionally glassy[.]" She also observed "an open container of White Claw . . . on the back floorboard behind [the driver's] seat" and she noted that Mr. Acres' "movements were a bit slow."

{¶5} Mr. Acres initially told Sergeant Parente that he had not been drinking. He admitted drinking only after Sergeant Parente told him she saw the open White Claw, an alcohol beverage, and that she could smell alcohol. Mr. Acres acknowledged drinking at a graduation party earlier in the evening. He also admitted drinking the White Claw that she saw in the back of the truck.

{¶6} Sergeant Parente asked Mr. Acres to exit his truck after Officer David Stepka arrived. She directed Mr. Acres to the front of her cruiser where she administered three field sobriety tests: the horizontal gaze nystagmus test ("HGN"); the walk and turn test; and the one leg stand test. Following the tests, Sergeant Parente arrested Mr. Acres for operating a vehicle under the influence of alcohol. She handcuffed Mr. Acres, reading him his *Miranda* rights, and transported him in her cruiser to Ohio State Highway Patrol ("OHSP") Post 52 to submit to a breath test on an Intoxilyzer 8000 machine.

**{¶7}** Trooper Benjamin Miller administered the breath test on the Intoxilyzer 8000. The result of the breath test indicated a blood alcohol content ("BAC") of 0.138 grams per two hundred ten liters.

**{¶8}** Mr. Acres was charged with one count of operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; one count of operating a vehicle with a prohibited concentration of alcohol in his breath in violation of R.C. 4511.19(A)(1)(d), a misdemeanor of the first degree; one count of underage possession of alcohol in violation of R.C. 4301.69(E)(1), a misdemeanor of the third degree; and one count of open container in violation of R.C. 4301.62(B)(4), a minor misdemeanor.

**{¶9}** Mr. Acres moved to suppress the evidence against him, arguing that (1) Sergeant Parente lacked probable cause to stop and detain him; (2) Sergeant Parente lacked reasonable suspicion to remove him from his truck and conduct field sobriety tests; (3) the field sobriety tests were not conducted in substantial compliance with NHTSA standards; (4) Sergeant Parente lacked probable cause to arrest him; (5) the chemical test on Intoxilyzer 8000 was not conducted in strict compliance with the Ohio Administrative Code; and, (6) his statements were obtained in violation of his constitutional rights under both the United States and Ohio Constitutions.

**{¶10}** Following a hearing, the municipal court granted in part and denied in part Mr. Acres' motion to suppress. The court granted the motion as it pertained to the HGN and OLS test results and denied the motion on all other raised issues.

**{¶11}** Mr. Acres pleaded no contest to the charges. The municipal court found Mr. Acres guilty and at sentencing it merged the prohibited breath concentration count into the general under the influence count and only sentenced Mr. Acres on the under the influence count in violation of R.C. 4511.19(A)(1)(a). The execution of Mr. Acres' sentence was stayed pending appeal.

{¶12} Mr. Acres appeals the trial court's ruling on the motion to suppress, raising four assignments of error.

II.

**FIRST ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN DENYING MR. ACRES'[] MOTION TO SUPPRESS BECAUSE THE STOP AND INITIAL ENCOUNTER OF MR. ACRES WAS IMPROPER.**

{¶13} Mr. Acres argues in his first assignment of error that the trial court erred when it denied his motion to suppress because the stop and initial encounter was improper. We disagree.

**Motion to Suppress**

{¶14} The Ohio Supreme Court has stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 2003-Ohio-5372, ¶ 8. Pursuant to *Burnside*, "[o]nce this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo." *State v. Iloba*, 2021-Ohio-3700, ¶ 7 (9th Dist.), citing *Burnside* at ¶ 8.

{¶15} Mr. Acres argues that Sergeant Parente lacked probable cause to initiate the stop and that she unlawfully expanded the purpose of the stop. He argues that the encounter was an impermissible warrantless seizure under the Fourth Amendment and that Sergeant Parente unlawfully expanded the encounter. The State argues that Sergeant Parente was engaging in the duty of community caretaking when she stopped and checked on Mr. Acres. It further asserts that

Sergeant Parente was correct to detain Mr. Acres for possible impairment based on her observations including the odor of alcohol coming from the truck, Mr. Acres' glassy eyes and slow movements, the open White Claw, and Mr. Acres initially denying alcohol consumption but then admitting that he had drank a White Claw or two at a graduation party that evening.

### Community Caretaking Exception

{¶16}  The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  Article I, Section 14, of the Ohio Constitution contains nearly identical language. The Fourth Amendment "prohibit[s] law enforcement from conducting unreasonable and warrantless searches and seizures."  *State v. Clapper*, 2012-Ohio-1382, ¶ 7 (9th Dist.). The traffic stop of a vehicle constitutes a seizure for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 809-810 (1996).

{¶17}  "The community caretaking function is an exception to the Fourth Amendment warrant requirement . . . ." *State v. Delong*, 2018-Ohio-5262, ¶ 10 (9th Dist.). As explained in *DeLong*, the community caretaking exception:

> permits police officers to stop a person to render aid if they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury. Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out community caretaking functions to enhance public safety. When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base [the] safety concerns.

(Internal quotations and citations omitted.) *Id.*

{¶18}  "'A key community caretaking function is to help motorists who are stranded or in distress.'"  *Clapper* at ¶ 13, quoting *State v. Chapa*, 2004-Ohio-5070, ¶ 8 (10th Dist.).  We recognized in *Clapper* that the community caretaking exception function applies to a stationary

vehicle that is parked where it should not be parked "as it gives rise to an inference as to the vehicle's or the driver's impairment." *Id.* at ¶ 13. The community caretaking function may also apply to a vehicle parked on the berm of a roadway with its turn signal activated. *State v. Corn*, 2022-Ohio-3095, ¶¶ 8, 10, 15 (9th Dist.).

{¶19} Mr. Acres has not challenged the trial court's factual findings that his truck was parked with its hazard lights activated on the paved shoulder of the road at 12:50 a.m., that it was dark, and that traffic was intermittent. Accepting these factual findings as true, we must independently consider whether Sergeant Parente was engaging in a community caretaking function when she stopped and approached the truck.

{¶20} We conclude that Sergeant Parente was engaging in a community caretaking function when she approached Mr. Acres' truck. It was late at night, dark, traffic was intermittent, and there were no other parked vehicles around. Mr. Acres' hazard lights were activated. Sergeant Parente testified that she had travelled this route earlier in the evening during her patrol duties and that no vehicles were previously parked along the roadway. It was reasonable for Sergeant Parente to believe that Mr. Acres' truck was disabled or that the truck's occupant(s) needed assistance. Therefore, we conclude that Sergeant Parente was engaging in a community caretaking function and that this exception applies to her initial encounter with Mr. Acres.

### Reasonable Suspicion to Detain

{¶21} "An officer may not prolong a stop for the purpose of conducting inquiries unrelated to the original purpose [for the stop] without 'the reasonable suspicion ordinarily demanded to justify detaining an individual.'" *Iloba*, 2021-Ohio-3700, at ¶ 9 (9th Dist.), quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). Hence, "a police officer does not need probable cause to conduct a field sobriety test; rather, he must simply have a reasonable suspicion

of criminal activity." *State v. Slates*, 2011-Ohio-295, ¶ 24 (9th Dist.); *State v. Sugden*, 2024-Ohio-4442, ¶ 28 (9th Dist.). "[R]easonable suspicion exists if an officer can point to specific and articulable facts indicating that [an individual] may be committing a criminal act." (Internal quotations and citations omitted.) *Sugden* at ¶ 28. "'The totality of the circumstances is considered when determining whether reasonable suspicion exists.'" *Id.*, quoting *State v. Panaro*, 2018-Ohio-1005, ¶ 18 (9th Dist.).

**{¶22}** Mr. Acres argues "[a]ssuming arguendo, the stop fell under a community caretaking function," that Sergeant Parente's community caretaking role terminated once she discovered why he was stopped and that he was not in need of assistance. He contends that Sergeant Parente unlawfully extended the purpose of the stop. The State argues that Sergeant Parente was correct to detain Mr. Acres and administer field sobriety testing considering her observations including the odor of alcohol coming from the truck, the open White Claw, Mr. Acres' glassy eyes and slow movements, and the fact that Mr. Acres initially denied yet later admitted to consuming alcohol that evening.

**{¶23}** Mr. Acres does not contest or challenge the trial court's factual findings that the stop occurred around 12:50 a.m.; Sergeant Parente had immediately detected an odor of alcohol coming from the truck; his eyes were glassy; his movements were a bit slow; he initially told Sergeant Parente he had not consumed any alcohol that evening; and he admitted to consuming one or two White Claws only after Sergeant Parente told him that she could smell alcohol and that she saw the open White Claw inside the truck. He argues that the appearance of glassy eyes was due to crying after learning that his grandfather had passed away. As set forth above, he contends that any community caretaking function terminated once Sergeant Parente discovered the reason

for the stop and that he was not in need of assistance. It is his position that Sergeant Parente unlawfully extended the purpose of the stop.

{¶24} These facts that are before the Court in this case are similar to those in *Corn*, 2022-Ohio-3095 (9th Dist.). At issue in *Corn* was whether it was lawful for the sergeant to continue detaining Mr. Corn after the sergeant's welfare check was concluded. *Id.* at ¶ 8. Like Sergeant Parente, the sergeant in *Corn* "observed several indicators of impairment" during his conversation with Mr. Corn, including the odor of alcohol coming from the vehicle and "the fact that Mr. Corn had red, bloodshot, and glassy eyes . . . ." *Id.* at ¶ 11. Mr. Corn had also admitted to consuming alcohol earlier in the evening. *Id.*

{¶25} The municipal court held in *Corn* that the sergeant in that case "lacked reasonable suspicion for Mr. Corn's continued detention." *Id.* at ¶ 13. This Court disagreed and concluded that, "[b]ased on a review of the totality of the circumstances . . . [the sergeant] possessed reasonable suspicion to detain Mr. Corn to investigate his possible impairment." *Id.* at ¶ 17. We concluded that the facts "gave rise to reasonable suspicion for Mr. Corn's continued detention" and that, as such, the trial court erred when it granted Mr. Corn's motion to suppress. *Id.* This Court's reasoning and analysis in *Corn* apply to the facts in this case.

{¶26} Based on a review of the totality of the circumstances in this case, we conclude that Sergeant Parente possessed reasonable suspicion to detain Mr. Acres to investigate his possible impairment. These suspicions were apparent immediately upon her talking with Mr. Acres in her community caretaker function. Sergeant Parente observed the odor of alcohol, glassy eyes and slow movements, and an open container of an alcoholic beverage in the truck. Although he initially denied alcohol consumption, Mr. Acres admitted to consuming alcohol early that evening at a party.

{¶27}  Mr. Acres' first assignment of error is, accordingly, overruled.

## SECOND ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT FOUND THE BREATH TESTING INSTRUMENT USED IN THIS CASE WAS CERTIFIED IN SUBSTANTIAL COMPLIANCE WITH THE OHIO ADMINISTRATIVE CODE.**

{¶28}  Mr. Acres argues in his second assignment of error that the trial court erred when it denied his motion to suppress and found that the breath testing instrument used in this case, the Intoxilyzer 8000, was certified in substantial compliance with the Ohio Administrative Code. Based on the facts of this case, we conclude that the arguments presented in this assignment of error are moot and we accordingly decline to address them on appeal.

{¶29}  The facts of this case are similar to those that were before this Court in *State v. Tucholsky*, 2023-Ohio-3292 (9th Dist.).  Like Mr. Acres, the defendant in *Tucholsky* pleaded no contest to operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and operating a vehicle with a prohibited concentration of alcohol in her breath in violation of R.C. 4511.19(A)(1)(d). *Id.* at ¶ 7. The municipal court merged the prohibited breath concentration count into the general under the influence count at sentencing and only sentenced the defendant on the under the influence count. *Id.*

{¶30}  Among other arguments, the defendant argued on appeal in *Tucholsky* that her breath test results should have been suppressed because "the State did not establish that the dry gas control used by the Intoxilyzer 8000 machine complied with Ohio's administrative requirements."  *Id.* at ¶ 6. We concluded that this argument was moot on appeal because the defendant "was convicted of operating a vehicle under the influence under Section 4511.19(A)(1)(d) and not of operating a vehicle with a prohibited concentration of alcohol in her breath under Section 4511.19(A)(1)(d) . . . ." *Id.* at ¶ 11.

**{¶31}** Mr. Acres pleaded no contest to one count of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and one count of operating a vehicle with a prohibited concentration of alcohol in his breath in violation of R.C. 4511.19(A)(1)(d). As in *Tucholsky*, the trial court merged the prohibited concentration of alcohol count into the general under the influence count and it only sentenced him on the under the influence count.

**{¶32}** The arguments presented in Mr. Acres' second assignment of error pertain to the Intoxilyzer 8000. The results of this test are pertinent to whether he operated a vehicle with a prohibited concentration of alcohol in his breath, in violation of R.C. 4511.19(A)(1)(d). *See Tucholsky* at ¶ 9. Mr. Acres was not convicted of this offense, however, as the municipal court merged it into the under the influence offense in violation of R.C. 4511.19(A)(1)(a) at sentencing. *See id.*

**{¶33}** For the reasons set forth above, Mr. Acres' arguments concerning the administration of the breath test, and whether the Intoxilyzer 8000 was certified in substantial compliance with the Ohio Administrative Code, are moot and his second assignment of error is overruled on this basis.

### THIRD ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN DENYING MR. ACRES'[] MOTION TO SUPPRESS WHEN IT FOUND THE WALK AND TURN [TEST] WAS CONDUCTED IN SUBSTANTIAL COMPLIANCE WITH NHTSA.**

**{¶34}** Mr. Acres argues in his third assignment of error that the trial court erred when it denied his motion to suppress and found that the walk and turn test was conducted in substantial compliance with NHTSA. We disagree.

**{¶35}** As set forth above, this Court's review of a trial court's ruling on a motion to suppress "presents a mixed question of law and fact." *Burnside*, 2003-Ohio-5372, at ¶ 8. We "must

accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.* If the facts are accepted as true, we "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*; *Iloba*, 2021-Ohio-3700, at ¶ 7 (9th Dist.).

**{¶36}** Mr. Acres argues that Sergeant Parente failed to substantially comply with NHTSA when administering the walk and turn test. He argues that Sergeant Parente was not trained on the 2023 NHTSA Manual and that, according to NHTSA, inner ear problems can result in difficulty performing this test. Mr. Acres contends Sergeant Parente improperly proceeded with the walk and turn test after observing the visible injury to his face and ear and being advised that he was assaulted that evening.

**{¶37}** The State argues it established by clear and convincing evidence that Sergeant Parente administered the walk and turn test in substantial compliance with NHTSA. It maintains that Mr. Acres advised Sergeant Parente that he did not have any head injuries, that he was fully capable of performing field sobriety tests, and that he was willing to proceed with field sobriety testing. It asserts that Sergeant Parente properly recited the walk and turn instructions to Mr. Acres, that she demonstrated the test for Mr. Acres, and that Mr. Acres confirmed he understood the test's instructions.

### Standard of Review for Field Sobriety Tests

**{¶38}** "R.C. 4511.19 requires that in order for the results of field sobriety tests to be admissible, the tests must have been administered in substantial compliance with standardized procedures." *State v. Hayes*, 2023-Ohio-4769, ¶ 15 (9th Dist.), citing R.C. 4511.19. The State may introduce the results of field sobriety tests if it shows:

> by clear and convincing evidence that the officer administered the test in substantial
> compliance with the testing standards for any reliable, credible, and generally

accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]

*Id.*, quoting *State v. Sunday*, 2006-Ohio-2984, ¶ 20 (9th Dist.), quoting R.C. 4511.19(D)(4)(b). "These testing standards include the NHTSA guidelines." *Id.* The State has the burden of establishing substantial compliance. *Id.*

### Administration of the Walk and Turn Test

{¶39} The trial court found that Sergeant Parente conducted the walk and turn test on the fog line between her cruiser and Mr. Acres' truck. The surface was dry, level, hard, non-slippery, and lit. Sergeant Parente allowed Mr. Acres to pull his shoes fully onto his feet before beginning this test.

{¶40} Sergeant Parente instructed Mr. Acres to start the test by placing his left foot on the fog line with his right foot in front of the left. He was instructed that his right heel was to touch the left foot's toes. Sergeant Parente instructed Mr. Acres that he was to hold this starting position until she told him otherwise. She did not confirm Mr. Acres' understanding of these preliminary instructions.

{¶41} Sergeant Parente then explained and demonstrated the nine-step maneuver, the required pivot turn, and the counting requirements for this test. Mr. Acres was instructed to keep his arms at sides, to watch his feet, and to count out loud. He was further instructed that, once the test began, he was to continue walking until it was completed. Sergeant Parente confirmed Mr. Acres' understanding of the instructions. She had to remind Mr. Acres twice during instructions to resume the starting position.

{¶42} Sergeant Parente testified that she observed four of the eight clues of impairment in the walk and turn test. The relevant portions of the NHTSA manual were submitted as a joint

exhibit and are part of the record in this case. Based on the NHTSA manual, two or more clues of impairment in the walk and turn test indicates "the subject's BAC as at or above 0.08" with a "79%" accuracy rate.

{¶43} Sergeant Parente's testimony, the dash cam video, and the body worn camera video support the trial court's factual findings. Mr. Acres has not challenged these factual findings on appeal. He argues, rather, that Sergeant Parente did not substantially comply with NHTSA standards when administering this test as he had a visible injury to his face and ear. He suggests that this injury may have resulted in "inner ear problems [which] can result in difficulty performing this test."

{¶44} Upon our independent review of the record, including the NHTSA guidelines, dash camera video, body camera video, and Sergeant Parente's testimony, we cannot say that the trial court erred in denying Mr. Acres' motion to suppress on this issue. Sergeant Parente asked Mr. Acres before administering any field sobriety tests whether he had recent injuries, including head injuries, that would prevent him from walking the line on a normal day. Mr. Acres denied having any such injuries. Sergeant Parente asked Mr. Acres about the scratch on his face. He denied being in pain and he declined medical assistance.

{¶45} Accordingly, for the reasons set forth above, Mr. Acres' third assignment of error is overruled.

### FOURTH ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN DENYING MR. ACRES'[] MOTION TO SUPPRESS, BECAUSE [SERGEANT] PARENT[E] LACKED PROBABLE CAUSE TO ARREST MR. ACRES.**

**{¶46}** Mr. Acres argues in his fourth assignment of error that the trial court erred in denying his motion to suppress because Sergeant Parente lacked probable cause to arrest him. We disagree.

**{¶47}** "'[T]his Court reviews a probable cause determination de novo.'" *State v. Russo*, 2009-Ohio-6914, ¶ 6 (9th Dist.), quoting *Sunday*, 2006-Ohio-2984, at ¶ 28 (9th Dist.). This Court has explained that

> [t]he legal standard for probable cause to arrest for OVI is whether at the moment of the arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.

(Internal quotations and citations omitted.) *Sugden*, 2024-Ohio-4442, ¶ 36 (9th Dist.). The totality of the facts and circumstances can support a finding of probable cause even where the test results must be excluded. *Id.*

**{¶48}** Mr. Acres argues that Sergeant Parente did not have probable cause to arrest as he was lawfully parked, was not in need of assistance, and was not acting in a way that would indicate impairment. He again contends that Sergeant Parente failed to account for inner ear problems when administering the walk and turn test and he explains that his apparent glassy eyes was a result of crying due to his grandfather's death. The State maintains "that the totality of the circumstances of this case are sufficient to lead a reasonable person to believe that Mr. Acres had been operating his vehicle in violation of R.C. 4511.19."

**{¶49}** Sergeant Parente engaged in a community caretaking function when she approached Mr. Acres' truck. When she approached the truck, she immediately smelled the odor of alcohol coming from the truck. She testified that Mr. Acres' eyes were glassy and that his movements were slow. Sergeant Parente observed an open White Claw alcoholic beverage on the back floorboard of the truck. After an initial denial, Mr. Acres admitted to consuming alcohol at a

graduation party that he had just left. Sergeant Parente testified that she observed four of the eight clues of impairment in the walk and turn test.

{¶50} Based upon a review of the totality of the circumstances, we conclude that the trial court did not err in denying Mr. Acres' motion to suppress and finding Sergeant Parente had probable cause to arrest Mr. Acres for operating under the influence of alcohol. Mr. Acres' fourth assignment of error is overruled.

## III.

{¶51} Mr. Acres' assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

CATHERINE MEEHAN, Attorney at Law, for Appellant.

GREGORY A. HUBER and J. MATTHEW LANIER, Prosecuting Attorneys, for Appellee.